**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>　　Plaintiff,<br><br>　　v.<br><br>**AMERICAN VEHICLE PROTECTION CORP.**, a corporation,<br><br>**CG3 SOLUTIONS INC.**, also d/b/a MY PROTECTION PLAN INC., a corporation,<br><br>**TONY ALLEN GONZALEZ**, individually and as an owner, officer, and/or manager of American Vehicle Protection Corp., CG3 Solutions Inc., and Tony Gonzalez Consulting Group, Inc.<br><br>**TONY GONZALEZ CONSULTING GROUP, INC.**, also d/b/a THE GONZALEZ GROUP, a corporation,<br><br>**CHARLES GONZALEZ**, individually and as an owner, officer, and/or manager of American Vehicle Protection Corp. and of CG3 Solutions Inc.,<br><br>**DANIEL KOLE**, individually and as an owner, officer, and/or manager of American Vehicle Protection Corp. and of Kole Consulting Group, Inc.<br><br>**KOLE CONSULTING GROUP, INC.**, a corporation,<br><br>　　Defendants. | **COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

Page **1** of **17**

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Act ("Telemarketing Act"), 15 U.S.C. §§6101-6108, which authorize the FTC to seek, and the Court to order, preliminary and permanent injunctive relief, monetary relief, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a), and in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. Defendants' violations are in connection with their marketing and sale of purported extended automobile warranties, also known as vehicle service agreements.

## SUMMARY OF THE CASE

2. Since at least 2018, Defendants have deceptively marketed and sold purported "extended automobile warranties" to consumers across the United States. Through its telemarketers, Defendants misrepresent that they are, or are affiliated with, a consumer's vehicle manufacturer or dealer. Under this guise, Defendants make illusory promises of "bumper-to-bumper" coverage or "full vehicle" coverage for their extended warranties, and they guarantee that consumers can obtain a refund within 30 days of either purchasing or receiving the warranty if they are not satisfied. The cost of the warranties generally ranges between $2800 and $3400.

3. In fact, Defendants are not, or are not affiliated with, a consumer's vehicle manufacturer or dealer, and consumers do not receive "bumper-to-bumper" or "full vehicle" coverage. Many consumers pay hundreds or thousands of dollars to obtain the warranty from AVP but cannot obtain a refund. Defendants' scheme has bilked consumers of over $6 million since 2018.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1337(a), and 1345.

5. Venue is proper in this district under 28 U.S.C. §1391(b)(1), (b)(2), (c)(1), (c)(2), and 15 U.S.C. §53(b).

## PLAINTIFF

6. The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. §45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the TSR, 16 C.F.R. §310, which protects consumers from unfair, deceptive, and abusive telemarketing practices.

## DEFENDANTS

7. Defendant American Vehicle Protection Corp. ("AVP") is a Florida corporation with its principal place of business at 700 E. Atlantic Blvd., Pompano Beach, Florida 33060. AVP transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, AVP has advertised, marketed, distributed, or sold extended automobile warranties to consumers throughout the United States.

8. Defendant CG3 Solutions Inc., also d/b/a My Protection Plan Inc., ("MPP") is a Florida corporation with its principal place of business at 700 E. Atlantic Blvd., Pompano Beach, Florida 33060. MPP transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, MPP has advertised, marketed, distributed, or sold extended automobile warranties to consumers throughout the United States.

9. Defendant Tony Allen Gonzalez is one of the managers or officers of AVP, MPP, and Tony Gonzalez Consulting Group, Inc. At all times relevant to this Complaint, acting alone and

in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including managing the day-to-day operations of the companies. Tony is the primary signatory on AVP company checks, which he uses to pay for the telemarketing scam, including paying for telemarketers, telephone service, leads, rent, the accountant, cleaning services, and taxes. He also endorses the remotely created checks from consumers that are deposited into AVP's bank account. Tony Gonzalez resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

10. Defendant Tony Gonzalez Consulting Group, Inc., also d/b/a The Gonzalez Group, ("TGCG") is a Florida corporation with its principal place of business at 249 NW 79th Ave., Margate, Florida 33063. TGCG receives checks from AVP and is the conduit by which Tony Gonzalez is paid for the work he performs for AVP and MPP. Tony Gonzalez is sole owner of TGCG. TGCG transacts or has transacted business in this District.

11. Defendant Charles Gonzalez is one of the officers or managers of AVP and MPP. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Charles is one of the two signatories on the bank account for My Protection Plan. Charles Gonzalez resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

12. Defendant Daniel Kole is an owner and one of the officers or managers of AVP, MPP, and Kole Consulting Group, Inc. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including but not limited to

providing the start-up funds for AVP, reviewing telemarketers' sales scripts and dictating changes to those scripts, and firing employees. Kole resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

13. Defendant Kole Consulting Group, Inc., ("KCG") is a Florida corporation with its principal place of business at 13749 NW 22nd Street, Sunrise, Florida 33323. KCG receives checks from AVP and is the conduit by which Daniel Kole is paid for the work he performs for AVP and MPP. Daniel Kole is sole owner of KCG. KCG transacts or has transacted business in this District.

## COMMON ENTERPRISE

14. Defendants AVP, MPP, TGCG, and KCG (collectively, the "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. Corporate Defendants AVP and MPP have conducted the business practices described below as interrelated companies that have common managers, business functions, employees, and office locations, and have commingled funds. Corporate Defendants TGCG and KCG have facilitated the payment of these commingled funds to Tony Gonzalez, Charles Gonzalez, and Daniel Kole, (collectively, the "Individual Defendants") and have managers common to the common enterprise; they are owned solely by Tony Gonzalez and Daniel Kole, respectively. Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

15. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. §44.

## DEFENDANTS' BUSINESS ACTIVITIES

16. Since at least 2018, Defendants have operated a scheme to trick consumers into paying hundreds and thousands of dollars for a purported "extended automobile warranty." Specifically, in marketing and selling these warranties, Defendants make the following misrepresentations: (1) that AVP is, or is affiliated with, a consumer's automobile manufacturer or dealer; (2) that the warranty provides "bumper-to-bumper" or "full vehicle" coverage; and (3) that AVP will provide a refund to consumers with no conditions or restrictions, if the consumer requests a refund within 30 days of purchasing or receiving the warranty.

### Defendants Misrepresent That They Are Affiliated With Consumers' Car Dealers or Manufacturers

17. For the initial sales pitch, Defendants contact consumers through outbound telephone calls. Without mentioning AVP or MPP, the telemarketers follow a script in which they introduce themselves to consumers by saying: "Hi, this is Joe [or other name] with [_____] dealer services." In the blank, the telemarketers use the name of the manufacturer or dealership of the car owned by the consumer. For example, an AVP telemarketer told a Ford owner that he was calling from "Dealer Services" about his Ford Focus. In another example, an AVP telemarketer told an owner of a Toyota that he was calling from Toyota. Still another AVP telemarketer told a Jeep owner that he was with "Chrysler/Jeep Dealer Services."

18. Defendants sometimes state that they are from a company that handles the extended warranty sales for the consumer's particular automobile manufacturer. For example, one

telemarketer told a consumer that his company handled all of the extended warranty sales for Chevrolet, which was the manufacturer of the consumer's car.

19. Telemarketers transfer consumers interested in purchasing a purported warranty to so-called specialists, making statements such as "So I would like to get you on the line with my _____ specialist." The blank is filled in by stating the name of the car that the consumer owns. Then these specialists make additional misrepresentations that AVP is affiliated with an automobile dealer or manufacturer, such as "I am from Ford."

20. In truth, Defendants are not affiliated in any way with any automobile manufacturers or dealers. When consumers receive the warranty booklets in the mail from Corporate Defendants, after they have paid a down payment, the warranty booklets identify the sellers of the extended warranty as American Vehicle Protection and the claims administrator such as Palmer Administrative Services --- not any automobile manufacturer or dealer.

**Defendants Misrepresent That Their Warranties Provide "Bumper-to-Bumper" Coverage**

21. Defendants also tell consumers that their extended warranty protects the car with "bumper-to-bumper coverage" or "full vehicle coverage." In addition, Defendants often misrepresent that specific parts of consumers' vehicles are included in the warranty, particularly when consumers ask whether particular parts or systems are covered.

22. Contrary to representations made by Defendants' telemarketers, the warranties have significant restrictions and exceptions to coverage. The warranty booklet, which consumers do not see until they have paid their "down payment" or "initial payment," contains a long list of parts and systems that are not covered and conditions under which coverage is not available. For example, during the sales pitch, one consumer asked if struts were covered, and the telemarketer told him that they were. However, the warranty booklet states that they are not covered, and

when the consumer tried to get that part repaired or replaced, coverage was refused. Another consumer was denied coverage for replacement of an oil pump, despite AVP's telemarketing representations about full vehicle coverage.

### Defendants Falsely Promise That Consumers Can Obtain a Refund If They Cancel Within 30 Days

23. Defendants promise consumers that they will be able to get their money refunded if they cancel the warranty within 30 days of either purchasing or receiving the warranty.

24. In numerous instances, upon discovering that the warranty does not come from their auto manufacturers or dealers or upon realizing that the "bumper-to-bumper" or "full vehicle" warranty coverage has major gaps and does not cover the full vehicle, many consumers attempt to cancel the warranty and obtain a refund. However, Defendants do not give the refunds promised to consumers. In some instances, consumers attempt to contact Defendants for a refund but are unable to reach anyone at AVP. Many phone calls go unanswered, and many phone messages do not get returned. In other instances, when purchasers cancel within the 30-day window, Defendants tell consumers that their refund is on the way, but the refund is often never issued. Consumers often do not get refunds until after the Better Business Bureau or a governmental authority contacts Defendants on behalf of consumers who complain about Defendants' refusal to give a refund.

### Defendants Use Remotely Created Checks, an Illegal Method of Payment

25. The use of a Remotely Created Payment Order ("RCPO") to obtain money from a consumer in a telemarketing transaction is an illegal method of payment. The RCPO is a check or other order of payment that the payee (in this case, the telemarketer) creates electronically, with software, using the payor's (a consumer's) bank account information. Unlike with a conventional check, the payor does not sign the RCPO. Instead, the RCPO usually bears a

statement indicating that the account holder (the account from which the money is to be drawn) authorized the check, such as "authorized by account holder" or "signature not required." The use of remotely created checks ("RCCs") in telemarketing transactions is a violation of the TSR. Because RCCs are not monitored systemically (indeed, RCCs are difficult, if not impossible, for individual financial institutions to monitor as a class), RCCs are often used to evade the authorization requirements and strong protections that NACHA has implemented through the ACH system.

26. Defendants often obtain payment from consumers through the use of remotely created checks by obtaining the bank account information of consumers and creating the checks through which Defendants access the consumers' bank accounts to withdraw funds.

### Defendants Call Numbers on the Do Not Call Registry

27. Defendants often place outbound calls to telephone numbers that have been put on the Do Not Call Registry by consumers. In fact, the managers of the company continue having their telemarketers call these numbers, despite their knowledge that they are on the Do Not Call Registry.

28. In addition, Defendants have never paid the required annual registration fee charged for access to the Do Not Call Registry.

### Knowledge of the Individual Defendants

29. Tony Gonzalez, Charles Gonzalez, and Daniel Kole not only operate and control the Corporate Defendants' deceptive business practices, but they knew, or consciously avoided knowing, about the deceptive practices from a steady stream of complaints and publicly-available information about AVP's fraudulent enterprise. In numerous instances, consumers complained directly to the Defendants about AVP's deceptive practices. In other instances, the

Better Business Bureau ("BBB") forwarded consumer complaints directly to AVP. Moreover, AVP was publicly designated an "F" rating by the BBB.

30.     In addition to their knowledge of consumers complaints about AVP's deceptive practices, the individual Defendants play integral roles in the deception itself. Tony Gonzalez supervises and provides scripts to AVP telemarketers who are making the deceptive warranty claims to consumers. Tony actively takes the files of Do-Not-Call ("DNC") consumers and dumps them back into the computer for AVP telemarketers to call again, illegally reusing DNC-registered consumer information. Kole has reviewed and made changes to AVP's deceptive telemarketing scripts. Charles Gonzalez created MPP by registering the company with the Florida Secretary of State, even after he and his brother, Tony, were ordered by the Florida Office of Insurance Regulation to cease and desist from operating an illegal auto warranty business.

## Conclusion

31.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission. As recently as November 22, 2021, even after learning of the Commission's investigation in August 2021, Defendants were continuing to make misrepresentations to consumers about affiliation, warranty coverage, and refunds; continuing to make telemarketing calls to telephone numbers on the Do Not Call Registry; continuing to place outbound telemarketing calls without downloading the Registry; and/or continuing to use remotely-created checks.

## VIOLATIONS OF THE FTC ACT

32.     Section 5(a) of the FTC Act, 15 U.S.C. §45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

33. Misrepresentations of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act, 15 U.S.C. §45(a).

## COUNT I
### Deceptive Representations in Violation of Section 5 of the FTC Act

34. In numerous instances in connection with the marketing and sale of purported extended automobile warranties, Defendants have represented, directly or indirectly, expressly or by implication, that:

    a. they are, are affiliated with, or represent, the car manufacturer or dealer of the car owned by the consumer;

    b. Defendants' warranties provide comprehensive ("bumper-to-bumper" or "full vehicle") coverage, and/or coverage for specific parts or systems for repair; or

    c. consumers can obtain a refund for any reason if they contact AVP within 30 days.

35. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 34, (a) Defendants are not, are not affiliated with, or do not represent the car manufacturer or dealer of the car owned by the consumer; (b) Defendants' warranties do not provide comprehensive coverage and/or coverage for specific parts or systems that consumers were told would be covered; or (c) Defendants do not refund consumers their money when the consumers cancel, or try to cancel, their warranties within 30 days of purchasing or receiving the warranty.

36. Therefore, Defendants' representations as set forth in Paragraph 34 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

37. In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§6101–6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter.

38. Defendants are "sellers" or "telemarketers" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. §310.2(dd), (ff), and (gg).

39. It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in misrepresenting, directly or by implication, in the sale of goods or services, any of the following material information:

   a. Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer, 16 C.F.R. §310.3(a)(2)(iii);

   b. Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies, 16 C.F.R. §310.3(a)(2)(iv); and

   c. A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity, 16 C.F.R. §310.3(a)(2)(vii).

40. The TSR prohibits sellers and telemarketers from making any false or misleading statement to induce any person to pay for goods or services. 16 C.F.R. §310.3(a)(4).

41. The TSR prohibits sellers and telemarketers from creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing. 16 C.F.R. §310.4(a)(9). A remotely created payment order includes a remotely created check. 16 C.F.R. §310.2(cc).

42. Among other things, amendments made to the TSR in 2003 established a "do not

call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or on the internet at www.donotcall.gov.

43. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or on the internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

44. The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at telemarketing.donotcall.gov, to pay the fee(s) if required, and to download the numbers not to call.

45. The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the Registry. 16 C.F.R. §310.8.

46. Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. §310.2 (v).

47. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry. 16 C.F.R. §310.4(b)(1)(iii)(B).

**Defendants Violate the Do Not Call Rules**

48. Defendants are "sellers" or "telemarketer[s]" engaged in "telemarketing," as defined by the TSR. 16 C.F.R. §310.2.

49. Defendants are sellers of extended automobile warranties, also known as vehicle service

agreements, to consumers.  Defendants have called consumers in the United States to induce the purchase of the products Defendants are selling.

50. Defendants are also telemarketers that initiate outbound telephone calls to consumers in the United States to induce the purchase of the products Defendants are selling.

51. Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate call.

52. Defendants have called consumers' telephone numbers that are on the National Do Not Call Registry without limiting such calls to persons who previously purchased or inquired about the goods or services Defendants are selling.

53. Defendants have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within such area codes that are included in the National Do Not Call Registry.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

54. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. §6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. §57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a).

## COUNT II
### Misrepresentation of Affiliation

55. In numerous instances, Defendants have misrepresented, directly or indirectly, expressly or by implication, that they are affiliated with, or endorsed or sponsored by, the car manufacturer or dealer of the car owned by the consumer.

56. Defendants' acts or practices, as set forth in Paragraph 55 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §310.3(a)(2)(vii).

## COUNT III
### Misrepresentations of Material Aspects of the Performance, Efficacy, Nature, or Central Characteristics of the Goods

57. In numerous instances, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of the performance, efficacy, nature or central characteristics of the goods or services they sell, including, but not limited to, that the extended automobile warranties they sell provide comprehensive ("bumper-to-bumper" or "full vehicle") coverage and/or coverage for specific parts or systems for repair.

58. Defendants' acts or practices, as set forth in Paragraph 57 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §310.3(a)(2)(iii).

## COUNT IV
### Misrepresentation of Refund

59. In numerous instances, Defendants have misrepresented, directly or indirectly, expressly or by implication, that the consumer can get a refund by cancelling with AVP within 30 days of purchasing the warranty or of receiving the warranty.

60. Defendants' acts or practices, as set forth in Paragraph 59 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §310.3(a)(2)(iv).

## COUNT V
### Use of Remotely Created Payment Orders in Connection with Telemarketing

61. In numerous instances, Defendants have created or caused to be created, directly or indirectly, a remotely created payment order (a remotely created check), as payment for goods or services offered or sold through telemarketing.

62. Defendants' acts or practices, as set forth in Paragraph 61 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §310.4(a)(9).

## COUNT VI
### Making Calls in Violation of the National Do Not Call Registry

63. In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a person's telephone number that is on the National Do Not Call Registry.

64. Defendants' acts or practices, as set forth in Paragraph 63 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §310.4(b)(1)(iii)(B).

## COUNT VII
### Failing to Pay National Registry Fees

65. In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. §310.8.

## CONSUMER INJURY

66. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the Telemarketing Sales Rule. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

  A. Enter a permanent injunction to prevent future violations of the FTC Act and the Telemarketing Sales Rule by Defendants;

B.    Grant preliminary injunctive and ancillary relief;

C.    Award monetary and other relief within the Court's power to grant, including rescission or reformation of contracts, the refund of money, the return of property, or other relief necessary to redress injury to consumers; and

D.    Award any additional relief as the Court determines to be just and proper.

Dated: February 8, 2022                                        Respectfully submitted,

/s/ Harold E. Kirtz
HAROLD E. KIRTZ, Trial Counsel
Florida Special Bar Number A5500743
HANS CLAUSEN, Trial Counsel
Florida Special Bar Number A5502378
Federal Trade Commission
Southeast Region
225 Peachtree Street, Suite 1500
Atlanta, Georgia 30303
Phone: 404-656-1357 (Kirtz)
           770-789-9378 (Kirtz mobile)
           404-656-1361 (Clausen)
Fax: 404-656-1379
E-mail: hkirtz@ftc.gov
             hclausen@ftc.gov

Attorneys for Plaintiff
**FEDERAL TRADE COMMISSION**