**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Ft. Lauderdale Division**

**Case 0:22-cv-60298-RAR**

AMERICAN VEHICLE PROTECTION CORP., a Florida corporation, TONY GONZALEZ, individually, TONY GONZALEZ CONSULTING GROUP, INC., a Florida corporation, CHARLES GONZALEZ, individually, and CG3 SOLUTIONS INC. f/k/a MY PROTECTION PLAN INC, a Florida corporation,

    Plaintiffs,

    vs.

FEDERAL TRADE COMMISSION, a federal administrative agency,

    Defendant.

**FIRST AMENDED COMPLAINT VERSUS THE FEDERAL TRADE COMMISSION**

COME NOW the Plaintiffs, American Vehicle Protection Corp. ("AVP"), Tony Gonzalez ("T. Gonzalez"), Tony Gonzalez Consulting Group, Inc. ("TGCG"), Charles Gonzalez ("C. Gonzalez"), and CG3 Solutions Inc. f/k/a My Protection Plan Inc. ("CG3") (collectively, "Plaintiffs"), by and through undersigned counsel, and for their First Amended Complaint (pursuant to Federal Rule of Civil Procedure 15(a)(1)(A)) seeking declaratory and injunctive relief against Defendant, Federal Trade Commission ("FTC" or "Defendant" or "Commission"), plead as follows:

1

## I. INTRODUCTION

1. This complaint is necessitated by the Commission's vote approving of, and subsequent filing of, a lawsuit against Plaintiffs. The FTC's complaint ("FTC Complaint") seeks, among other things, injunctive relief and equitable monetary damages in the form of consumer redress under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.*, for alleged violations of the Telemarketing Sales Rule, 16 C.F.R. § 310 *et seq.* ("TSR")—notwithstanding the fact that the sought-after relief exceeds the scope of authority granted to Defendant in the FTC Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq.* (the "Telemarketing Act").

2. Despite the unanimous Supreme Court decision in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021) rejecting a similar example of overreach by the FTC, the Commission has doubled-down on its abusive and incorrect enforcement methods.

3. This overreach is just the latest instance of Defendant's disdain for the limits to its authority, the FTC Act's requisite procedures, and the Commission's corresponding arbitrary and capricious decision-making.

4. Accordingly and as set forth below, Plaintiffs seek declaratory and injunctive relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 706, and the Declaratory Judgment Act. 28 U.S.C. § 2201 *et seq.*

## II. VENUE AND JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to and by virtue of 28 § U.S.C. 1331, 28 U.S.C. § 2201, 5 U.S.C. § 704, and other applicable laws and rules.

6. This Court has personal jurisdiction over the FTC, a federal government agency that is active in enforcing, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45, in this State.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because the FTC is an agency of the United States government, a substantial part of the events or omissions giving rise to this claim occurred within the Southern District of Florida, and several Plaintiffs reside in or are located within the Southern District of Florida.

### III.   PARTIES

8. Plaintiff AVP is a Florida corporation with its principal address in Ft. Lauderdale, Florida, within the Southern District of Florida.

9. Plaintiff T. Gonzalez is an individual residing in Broward County, Florida, within the Southern District of Florida. Plaintiff C. Gonzalez is an individual residing in Orange County, Florida.

10. Plaintiff TGCG is a Florida corporation with its principal address in Margate, Florida, within the Southern District of Florida.

11. Plaintiff CG3 is a Florida corporation with its principal address in Plantation, Florida, within the Southern District of Florida.

12. The FTC is an agency of the United States government created by federal statute, 15 U.S.C. § 41.

## IV. FACTS

13. The FTC Complaint wrongly claims that Plaintiffs are operating a "scheme" to "bilk" consumers of their money through telemarketing sales, purportedly in violation of the FTC Act and the TSR.[1]

14. As detailed below, the FTC Complaint is based on flawed information. It was built primarily upon (i) "whistleblower" accounts from a felon whose convictions include, among other things, mail fraud, fraud on financial institutions, practicing optometry without a license, stalking, harassing phone calls, grand theft, fraud on an innkeeper, injury to personal property, criminal contempt, probation violations, and possession of cocaine; and (ii) outdated Better Business Bureau data and ratings (AVP had a standard B rating as of January 23, 2022).

15. Defendant's allegations that AVP is out to "bilk" consumers is made entirely of whole cloth. AVP is a corporation engaged in the marketing and sale of vehicle service contracts, also generically called "extended auto warranties." AVP uses telemarketing to market and sell vehicle service contracts administered by a third party and backed by an insurer. In other words, AVP sells an actual product—legitimate extended auto warranties on which consumers may—and in fact do—make claims for repairs that are covered. There is no doubt that a benefit is conferred on consumers.

16. Ultimately, although Plaintiffs disagreed with the claims lodged in the FTC Complaint and the Commission's misguided portrayal of Plaintiffs, the Plaintiffs took the allegations seriously and in early November 2021 made the business decision to revamp AVP's policies, practices, and procedures.

---

[1] The FTC alleges that Plaintiffs are operating a common enterprise and so that allegations against AVP apply to all Plaintiffs.

17. To that end, as set forth below in more detail, Plaintiffs provided Defendant with several sworn statements, including declarations from a neutral third party, that testified substantively to contemporaneous events, including a complete break in sales and outbound telemarketing calls, training and certification by a third party quality assurance company in the interim, payment method changes, and a sales verification process through that same third party at AVP's expense that continues to this day.

18. Specifically, AVP ceased the sales and promotion of vehicle service contracts by approximately 12:00 p.m. EST on Monday, November 8, 2021. In furtherance of this stoppage, T. Gonzalez disabled AVP's dialer from having the capacity to make outbound sales calls. Furthermore, AVP employees and contractors who initiate sales calls were sent home when they arrived for their shifts on this date. The purpose of this stoppage was for AVP's employees and contractors to undergo renewed compliance training and to improve AVP's sales techniques.

19. In conjunction with this stoppage, AVP retained the services of Zero Variance, a third party consulting firm. Zero Variance reviewed and modified AVP's sales practices, policies and procedures and provided compliance, quality, and customer experience training to both AVP's management and telephone agents, as well as the management of AVP's outsourced call centers. Zero Variance also reviewed and modified telemarketing scripts to be used by AVP to ensure that they comply with requirements of the FTC Act, the Telemarketing Act, and the TSR.

20. Zero Variance trained AVP's employees and contractors on compliance with the FTC Act, the Telemarketing Act, the TSR, and AVP's internal policies and procedures in live training sessions. These training sessions took place on November 15, 16, and 17, 2021. Zero

Variance performed the training of agents in AVP's call center in Pompano Beach, Florida, and it performed the training of its outsourced call centers over Zoom.

21. To address the FTC's concerns as reflected in the FTC Complaint, as of November 18, 2021, AVP instituted new compliance policies and procedures which include, but are not limited to:

    a. All sales calls are independently verified by Zero Variance to ensure that no language is used on the calls that is misleading or deceptive;

    b. AVP accepts only credit cards and debit cards as a means of payment, and does not accept remotely created checks or other remotely created payment orders as a means of payment;

    c. AVP prohibits its employees and contractors from making any representations that AVP is, or is in any way affiliated with, the consumer's automobile manufacturer or dealer, as well as claims of bumper-to-bumper coverage and the like;

    d. AVP requires that its closers clearly specify any exclusions from the service contract's coverage on the telephone call;

    e. The implementation of a Telemarketing Compliance Manual;

    f. The transmission of a toll-free number and AVP's name as the caller ID signal on all outbound calls so that consumers may call to request to have their telephone numbers added to AVP's do-not-call list;

    g. Rededicating itself to ensuring that customers can receive full refunds if they request one within 30 days of purchasing an automobile service contract.

22. T. Gonzalez provided the Commission with detailed testimony on these steps taken in sworn Declarations dated November 11, 2021 and December 2, 2021. Counsel for Plaintiffs presented the Commission's staff attorney with these Declarations on November 11, 2021 and December 2, 2021, respectively. Counsel for Plaintiffs presented each individual Commissioner, through his or her legal advisor, with these Declarations on January 19 and 20, 2022.

23. Furthermore, Sarah Johnson, Zero Variance's Chief Operating Officer and Chief of Staff ("Johnson") provided sworn testimony as to the steps Zero Variance took to train AVP's employees and contractors, and to describe the third party verification process for all calls resulting in sales in a sworn Declaration dated December 2, 2021. Counsel for Plaintiffs presented the FTC's staff attorney with this Declaration on December 2, 2021. Finally, Johnson provided sworn testimony that the verification of sales calls, outlined in her Declaration dated January 18, 2022, continue as of January 18, 2022 and that she expects that Zero Variance will continue to provide these services indefinitely. Counsel for Plaintiffs presented each individual Commissioner, through his or her legal advisor, with these Declarations on January 19 and 20, 2022.

24. All processes and procedures described in the aforementioned Declarations continue to be implemented by AVP and Zero Variance through the date of this Complaint. The aforementioned Declarations are attached hereto collectively as **Exhibit 1**.

25. The processes and procedures described above constitute a revamping of the manner in which AVP conducts business, following a wholesale, complete break in sales calls. In fact, AVP has improved its rating to that of a B rating on the Better Business Bureau website as of January 23, 2022. As of February 8, 2022 when the Commission filed the FTC Complaint,

the last complaint noted on the BBB website predates AVP's break in sales and revamping of sales and telemarketing operations.

26. In short, for the past several months, Plaintiffs have not engaged in any conduct prohibited by the FTC Act or the TSR, nor is there any reason to believe they are about to engage in such conduct.

27. Despite repeated inquiries as to the status of any vote scheduled or taken by the Commission on this matter, Plaintiffs were met with silence. Then, suddenly, after repeated unanswered phone calls and emails, Plaintiffs' counsel received a phone call from an FTC attorney at approximately 3:30 p.m. EST stating that a vote had occurred that same morning (despite not appearing on the FTC calendar) and the result was affirmative in favor of filing the FTC Complaint. He also stated that the FTC Complaint had just been filed shortly before his call.

28. Crucially, though, as of February 8, 2022 (the date of the vote and filing of the FTC Complaint) the Commission had no reasonable basis to believe violations were occurring or about to occur nor could the Commission have reason to believe that the enjoining of AVP's operations would be in the public interest given Plaintiffs' adherence to the law.

29. The affirmative vote approving of the decision to file the Complaint against Plaintiffs, and the subsequent filing, constitutes final agency action of the Commission.

## **COUNT I (APA Claim)**

**The Decision to File a Lawsuit Seeking Injunctive Relief Under Section 13(b) of the FTC Act Was Arbitrary, Capricious, and an Abuse of Discretion.**

30. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-29 above.

31. Section 13(b) of the FTC Act states in full:

> **(b) Temporary restraining orders; preliminary injunctions.** Whenever the Commission has reason to believe
>
> > **(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
> >
> > **(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public
>
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b) (emphasis in original).

32. In order to file suit against Plaintiffs under Section 13(b), the FTC must "have reason to believe" both that (1) Plaintiffs *are violating or are about to violate* the FTC Act or the TSR *and* (2) an injunction (pending initiation and resolution of administrative complaint procedures) would *be in the public interest*.

9

33. Prior to deciding to file the FTC Complaint, the record before the Commission was replete with credible testimony and substantiated information that AVP had ceased its operations and subsequently revamped its marketing and sales procedures, such that it had been fully compliant with the laws enforced by the FTC for at least three months before the Commission improperly decided to file suit.

34. The Commission's decision to file the FTC Complaint was arbitrary, capricious, and an abuse of discretion because the FTC could not have reason to believe both that violations were ongoing or imminent *and* that an injunction would be in the public interest, given that the real, credible, and continuous actions taken by AVP, at AVP's expense, to comply with the FTC Act and TSR should have outweighed the FTC's reliance on (i) the false narrative provided by the Commission's felonious "whistleblower" with a history of dishonest and fraudulent acts and (ii) outdated BBB website information. The statute is written in the conjunctive and the FTC must have reason to believe both prongs.

35. Therefore, the Commission's decision to file the FTC Complaint was arbitrary, capricious, and an abuse of discretion.

**WHEREFORE**, this Court should hold the Commission's decision to file the FTC Complaint against Plaintiffs unlawful and set aside such action pursuant to 5 U.S.C § 706(2)(A).

### COUNT II (APA Claim)

**By Deciding to File the Complaint for Permanent Injunction Under Section 13(b) of the FTC Act Against Plaintiffs, the FTC Acted in Excess of Statutory Jurisdiction, Authority, and Limitations.**

36. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-35 above.

37.     The Commission's authority to initiate a lawsuit under Section 13(b) of the FTC Act is limited to circumstances in which the Commission is pursuing or anticipates pursuing administrative complaint enforcement procedures.  That language, in pertinent part below, states:

> **(b) Temporary restraining orders; preliminary injunctions.** Whenever the Commission has reason to believe
>
>> **(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, *and*
>>
>> **(2)** *that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed* by the Commission *or set aside by the court on review*, *or until the order of the Commission made thereon has become final*, would be in the interest of the public
>
> *the Commission* by any of its attorneys designated by it for such purpose *may bring suit in a district court of the United States to enjoin any such act or practice.*

15 U.S.C. 53(b) (emphasis added).

38.     Subsections (1) and (2) are written in the conjunctive.  So, in addition to having reason to believe of ongoing or imminent violations, the Commission also must have reason to believe that the enjoining of such ongoing or imminent violations would be in the public interest while the Commission issues an administrative complaint and until such administrative complaint is resolved or final.

39.     The only language in Section 13(b) that provides the Commission with express authority to file a lawsuit for injunctive relief is the first sentence "Whenever the Commission has reason to believe (1) that [a person is violating or is about to violate a law enforced by the FTC] . . . and (2) that the enjoining thereof [(i.e., the alleged imminent violation)] pending the issuance of a complaint by the Commission . . . would be in the interest of the public[,] the Commission . . . may bring suit in a district court . . . to enjoin any such act or practice."

11

Importantly, that right of action is contingent on both prongs as they are written in the conjunctive.

40. The Commission could not have had reason to believe Plaintiffs were violating or about to violate the laws enforced by the Commission at the time of the vote to file the FTC Complaint. Likewise, the Commission has no intention to pursue concurrent administrative proceedings and therefore could not have had reason to believe the requirements set forth in prong 2.

41. The Commission's decision to file the FTC Complaint without meeting subsections (1) and (2) of Section 13(b) of the FTC Act is in excess of the Commission's statutory jurisdiction, authority, and limitations.

**WHEREFORE**, this Court should hold the Commission's decision to file the FTC Complaint against Plaintiffs unlawful and set aside such action pursuant to 5 U.S.C § 706(2)(C).

### COUNT III (APA Claim)

**By Deciding to File the Complaint for Permanent Injunction Under Section 13(b) of the FTC Act Against Plaintiffs Without Plans to Initiate its Administrative Enforcement Procedures Set Forth in Section 5, the FTC Acted Without Observance of Procedure Required by Law.**

42. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-41 above.

43. The FTC Complaint seeks permanent injunctive relief pursuant to Section 13(b) of the FTC Act. Yet, in Section 13(b) Congress did not give the Commission authority to initiate a lawsuit seeking a permanent injunction independent of administrative enforcement proceedings. Section 13(b) does not contain a stand alone right of action for permanent injunctive relief.

44. Specifically, Section 13(b) is structured as follows: first, the heading indicates the topic of "temporary restraining orders" and "preliminary injunctions;" second, the first sentence provides the FTC with a limited right of action in the district courts (when it has reason to believe prongs 1 and 2); third, and finally, the procedural requirements for temporary or preliminary injunctive relief are provided, including the test for the district court, as well as two provisos, including temporal limitations and when subsequent permanent injunctive relief may be sought.

45. The second proviso regarding permanent injunctions does not provide express, independent authority for an independent cause of action. Rather, the only language in Section 13(b) that provides the Commission with express authority to file a lawsuit for injunctive relief is in the first sentence and is contingent on both prongs (1) and (2).

46. The decision to file the FTC Complaint for permanent injunction runs in contravention of the procedures contained in Sections 5 and 13(b) of the FTC Act, including that a complaint for injunctive relief may only be sought while administrative proceedings are contemplated or pending. Further, the statutory scheme outlined in 13(b) outlines that first the FTC must pursue a temporary restraining order or preliminary injunction and that once such temporary relief is obtained, the FTC may seek a permanent injunction after "proper proof" in "proper cases," but not before such temporary relief is obtained.

47. The decision to file the FTC Complaint would seek to unlawfully bypass the administrative complaint proceedings as well as prerequisite preliminary injunctive relief by claiming an independent cause of action for permanent injunction.

**WHEREFORE**, this Court should hold the Commission's decision to file the FTC Complaint seeking a permanent injunction against Plaintiffs unlawful and set aside such action pursuant to 5 U.S.C § 706(2)(D).

### COUNT IV (APA Claim)

**By Deciding to File a Complaint Against Plaintiffs Seeking Equitable Monetary Relief Pursuant to Section 19(a)(1) of the FTC Act for Violations of the Telemarketing Sales Rule, the FTC Acted in Excess of Statutory Jurisdiction, Authority, and Limitations.**

48. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-47 above.

49. The FTC Complaint seeks equitable monetary relief, like consumer redress, purportedly pursuant to Section 19(a)(1) of the FTC Act.

50. Section 19(a)(1) states in pertinent part:

> **(a) Suits by Commission against persons, partnerships, or corporations; jurisdiction; relief for dishonest or fraudulent acts.**
>
> > (1) If any person, partnership, or corporation violates any rule under this Act respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of section 5(a) [15 USCS § 45(a)]), then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) in a United States district court or in any court of competent jurisdiction of a State.

15 U.S.C. § 57b(a)(1).

51. Yet, the Commission's authority to initiate a lawsuit under Section 19(a)(1) of the FTC Act is limited to circumstances in which there is a violation of a rule promulgated under the FTC Act (i.e., if "any person . . . violates any rule under this Act"). The FTC Complaint only cites to violations of the TSR, which was not promulgated under the FTC Act. The TSR was promulgated under the Telemarketing Act.

52. The Commission's decision to file the FTC Complaint seeking equitable monetary relief under the pretense of Section 19 of the FTC Act based on alleged TSR violations is in excess of the Commission's statutory jurisdiction, authority, and limitations.

**WHEREFORE**, this Court should hold the Commission's decision to file the FTC Complaint against Plaintiffs unlawful and set aside such action pursuant to 5 U.S.C § 706(2)(C).

### COUNT V (Declaratory Judgment)

**Plaintiffs Seek a Declaration from this Court that the Telemarketing and Consumer Fraud and Abuse Prevention Act Does Not Provide for Equitable Monetary Relief in any Lawsuit Brought by the FTC Against Plaintiffs for Violations of the Telemarketing Sales Rule.**

53. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-52 above.

54. There is a real, justiciable, and present controversy between Plaintiffs and the FTC concerning whether the FTC has the statutory authority to seek equitable monetary relief through the legal authorities cited in the FTC Complaint (i.e., the TSR and Sections 13(b) and 19 of the FTC Act).

55. The FTC Complaint asserts violations of the TSR.

56. The TSR was promulgated under the Telemarketing Act. The Telemarketing Act, which provides for enumerated, limited enforcement actions by the Commission in 15 U.S.C. § 6105(b), does not provide for equitable monetary relief.

57. Furthermore, neither Section 13(b) nor Section 19 of the FTC Act provide the Commission with authority to seek equitable monetary relief for TSR violations.

58. There is no adequate remedy available to Plaintiffs by which this controversy may be resolved other than the relief requested.

**WHEREFORE,** pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a judgment declaring that the FTC lacks authority to seek equitable monetary relief against Plaintiffs for alleged violations of the TSR.

### COUNT VI (Declaratory Judgment)

**Plaintiffs Seek a Declaration from this Court that Section 13(b) of the FTC Act Does Not Provide the Commission with Authority to File a Lawsuit for Preliminary Injunction Independent of Administrative Complaint Procedures.**

59. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-58 above.

60. There is a real, justiciable, and present controversy between Plaintiffs and the FTC concerning whether the second proviso in Section 13(b) of the FTC Act provides the FTC authority to file a lawsuit for a permanent injunction under Section 13(b) independent of the administrative enforcement proceedings provided for in Sections 5 and 13(b).

61. Section 13(b) states in full:

**(b) Temporary restraining orders; preliminary injunctions.** Whenever the Commission has reason to believe

> **(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> **(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or

> preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b) (emphasis in original).

62. As is plain from the full text of the section set forth above, Section 13(b) is structured as follows: first, the heading indicates the topic of "temporary restraining orders" and "preliminary injunctions;" second, the first sentence provides the FTC with a limited right of action in the district courts (when it has reason to believe prongs 1 and 2, including that injunctive relief is in the public interest during the pendency of administrative complaint proceedings); third, and finally, the procedural requirements for temporary or preliminary injunctive relief are provided, including the test for the district court, as well as two provisos, including temporal limitations and when subsequent permanent injunctive relief may be sought.

63. The first proviso requires the FTC to take action to file its administrative complaint within 20 days of receiving its preliminary injunction in the district court or else the injunction is to be dissolved.

64. The second proviso further limits the district court proceedings (i.e., "Provided, *further*") such that the Commission can only then obtain a permanent injunction in "proper cases" after "proper proof." This second proviso does not provide an independent civil right of action for permanent injunctive relief, which would require disregarding the requisite procedures and limitations immediately preceding the second proviso.

17

65. There is no adequate remedy available to Plaintiffs by which this controversy may be resolved other than the relief requested.

**WHEREFORE,** pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a judgment declaring that Section 13(b) lacks an independent right of action for permanent injunctive relief by which the FTC can circumvent Section 13(b)'s limited authority to file a lawsuit seeking an injunction while administrative complaint proceedings are pending or anticipated at the Commission.

## COUNT VII (Declaratory Judgment)

**Plaintiffs Seek a Declaration from this Court that the FTC Lacks Authority to Seek Implied, Equitable Preliminary Injunctive Relief.**

66. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-65 above.

67. There is a real, justiciable, and present controversy between Plaintiffs and the FTC concerning whether the FTC may seek an equitable preliminary injunction as implied and ancillary to the language in Section 13(b) regarding circumstances in which a permanent injunction is available.

68. The second proviso in Section 13(b) states: "*Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b) (emphasis in original).

69. Supreme Court precedent prohibits a court from reading implied equitable relief into an express statutory enforcement scheme.

70. Reading an implied right to equitable preliminary injunctive relief into Section 13(b) would make the detailed and lengthy authority for preliminary injunctions already provided in Section 13(b) unnecessary and superfluous.

71. There is no adequate remedy available to Plaintiffs by which this controversy may be resolved other than the relief requested.

**WHEREFORE,** pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a judgment declaring that the FTC lacks implied authority to seek an equitable preliminary injunction against Plaintiffs.

Date: March 8, 2022                                          Respectfully submitted,

/s/ *Carl Taylor Smith*

| | |
|---|---|
| Mitchell N. Roth (admitted *pro hac vice*) | Carl Taylor Smith (Florida Bar Number: 1003543) |
| Virginia State Bar Number: 35863 | ROTH JACKSON GIBBONS CONDLIN, PLC |
| Genevieve C. Bradley (admitted *pro hac vice*) | 1519 Summit Avenue, Suite 102 |
| Virginia State Bar Number: 83325 | Richmond, VA 23230 |
| Gregory M. Caffas | tsmith@rothjackson.com |
| Virginia State Bar Number: 92142 | Telephone: 804-729-4440 |
| ROTH JACKSON GIBBONS CONDLIN, PLC | Facsimile: 804-441-8438 |
| 8200 Greensboro Drive, Suite 820 | |
| McLean, VA 22102 | |
| mroth@rothjackson.com | |
| gbradley@rothjackson.com | |
| gcaffas@rothjackson.com | |
| Telephone: 703-485-3535 | |
| Facsimile: 703-485-3525 | |

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of March 2022, a true and accurate copy of the foregoing First Amended Complaint versus the Federal Trade Commission was filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                                              */s/ Carl Taylor Smith*
                                                                               Carl Taylor Smith