UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division

Case 0:22-cv-60298-RAR

AMERICAN VEHICLE PROTECTION
CORP., et al.,

    Plaintiffs,

vs.

FEDERAL TRADE COMMISSION,

    Defendant.

**RESPONSE IN OPPOSITION TO FTC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

COME NOW the Plaintiffs American Vehicle Protection Corp. ("AVP"), Tony Gonzalez ("T. Gonzalez"), Tony Gonzalez Consulting Group, Inc. ("TGCG"), Charles Gonzalez ("C. Gonzalez"), and CG3 Solutions Inc. f/k/a My Protection Plan Inc. ("CG3") (collectively, "Plaintiffs"), by and through undersigned counsel, submit the following response in opposition to the Federal Trade Commission's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 53, "Motion"):

**I.    INTRODUCTION**

Plaintiffs sue the Federal Trade Commission ("FTC") under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, for arbitrary and capricious decision-making, failure to follow procedures, and exceeding statutory authority. First Am. Compl., ECF No. 39 ("ECF 39"). Plaintiffs also sue the FTC under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, seeking declarations regarding the limits of the FTC's statutory enforcement authorities. *Id.* The FTC now moves to dismiss Plaintiffs' First Amended Complaint pursuant to

1

Rule 12(b)(1) of the Federal Rules of Civil Procedure for a purported lack of subject matter jurisdiction.[1]

## II. THE MOTION TO DISMISS PLAINTIFFS' APA CLAIMS SHOULD BE DENIED.

The FTC lobs three attacks on the APA claims set forth in Counts I-IV of the First Amended Complaint: that the decision to file a lawsuit against Plaintiffs was not a final agency action; that the APA claims are not available because Plaintiffs purportedly can raise their claims as defenses in the FTC's enforcement action, and that review of the FTC's decision to file a lawsuit is unavailable where "agency action is committed to agency discretion by law." Mot. at 6-7. For the reasons set forth below, the FTC's arguments are misplaced and do not bar Plaintiffs' APA claims in Counts I-IV.

### A. The Commissioners' Affirmative Vote to File the FTC's Enforcement Action Constitutes a Final Agency Action.

The APA allows parties "suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek redress. 5 U.S.C. § 702. There is a presumption of judicial review of affirmative agency action like the FTC's affirmative decision to initiate this lawsuit. *Heckler v. Chaney*, 470 U.S. 821, 829 (1985). Although there are exceptions, generally

---

[1] There is a threshold question of whether the APA is even a jurisdiction-conferring statute and, accordingly, whether the FTC's motion to dismiss is properly brought under Rule 12(b)(1). Supreme Court cases state that this court has jurisdiction to review agency action under the APA pursuant to the federal question statute, 28 U.S.C. § 1331. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n.47 (1979) ("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331."); *see also Oryszak v. Sullivan*, 576 F.3d 522, 524-25 (Ginsburg, Circuit Justice, D.C. Cir. 2009) ("The jurisdiction of the district court did not depend upon the APA, which 'is not a jurisdiction-conferring statute.'" (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006)) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action.")). Assuming this Court agrees that it has jurisdiction via the federal question statute, then the FTC's arguments may be more properly raised on a 12(b)(6) motion to dismiss. Regardless of which rule the motion is brought under, Plaintiffs oppose dismissal on the grounds set forth in this brief.

an agency action must be "final" in order to be ripe for review under the APA. The Supreme Court in *Bennett v. Spear*, 520 U.S. 154 (1997), and the Eleventh Circuit in *LabMD, Inc. v. FTC*, 776 F.3d 1275 (11th Cir. 2015) (relying on *Bennett*), articulated a clear test for what constitutes a final agency action.

> The Supreme Court has held that an action must satisfy two requirements to be final: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."

*LabMD, Inc.*, 776 F.3d at 1278 (quoting *Bennett*, 520 U.S. at 177-78).

To that end, decisional law is clear that the FTC's initiation of its ***administrative*** enforcement proceedings by filing an ***administrative*** complaint is not a final agency action under the APA because the complaint under those circumstances does not "mark the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178; *see also FTC v. Std. Oil Co.*, 449 U.S. 232, 241 (1980) (reasoning that the FTC's decision to file an administrative complaint was not a final agency action because it was "not a definitive statement of position," but a "threshold determination that further inquiry is warranted and that a complaint should initiate [administrative] proceedings"); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1238 (11th Cir. 2003) ("[We] cannot conclude that the [administrative agency] has taken any final action [because] [i]t is beyond any doubt that further administrative action is forthcoming."). Indeed, the filing of an administrative complaint merely results in proceedings which only become reviewable when they result in a final cease and desist order from the Commission. *See* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."); *see also Bd. of Dental Examiners of Ala. v. FTC*, 519 F. Supp. 3d 1033, 1038-1039 (N.D. Ala. 2021) ("In other words,

3

the APA permits judicial review of preliminary, procedural, or intermediate agency action only upon review of an associated final agency action unless otherwise permitted by statute.").

In this case, at some point after the FTC began investigating Plaintiffs and others, Compl., ECF 1 ¶ 31, the FTC elected not to utilize its administrative tools, but instead presented its Complaint on February 8, 2022 to Chairwoman Khan and Commissioners Wilson, Phillips, and Slaughter for a vote to approve the Complaint's filing directly in district court. ECF 39 ¶ 27. The vote resulted in a directive to file and the Complaint was filed the same day. *Id.*

In its motion, the FTC claims that its decision to file its lawsuit is not a "final agency action." Mot. 7. If the FTC is correct (it is not), then the FTC could effectively insulate all of its enforcement actions from judicial review by refusing to utilize the exhaustive administrative proceedings set forth in § 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, including seeing an administrative complaint through to its enforceable (and reviewable) end, and instead proceed directly to district court where it believes such action is unreviewable. Such a result would defy the presumption in favor of judicial review of affirmative agency actions. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) ("The APA establishes a 'basic presumption of judicial review [for] one suffering legal wrong because of agency action.'" (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967))); *Chaney*, 470 U.S. at 829.

Regardless, the deciding vote by the Commissioners to file the Complaint clearly meets the first and second prongs of the test set forth in *Bennett* and *LabMD, Inc.* The decision to file in district court upon a vote of the Commissioners was the "consummation" of the FTC's "decisionmaking process" after its investigation. *Bennett*, 520 U.S. at 177-78. The Commissioners' decision to file is also plainly an action "by which rights or obligations have

4

been determined, or from which legal consequences will flow." *Id.* at 177.  Indeed, by the plain language of Section 13(b) of the FTC Act, the FTC was required to have determined it had the right, or legal authority, to file a lawsuit because it has "reason to believe" there were ongoing or imminent violations of the FTC Act and that an injunction of such violations pending administrative proceedings was in the public interest.  15 U.S.C. § 53(b).  Likewise, in order to file a lawsuit under Section 19(a)(1) of the FTC Act the FTC must have determined that Plaintiffs had violated a rule under the FTC Act.  15 U.S.C. § 57b(a)(1).

"By contrast, 'the Supreme Court has defined a nonfinal agency order as one that does not itself adversely affect complainant but only affects his rights adversely on the ***contingency of future administrative action***.'"  *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003) (emphasis added) (quoting *American Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939))).  By making its determination and filing in district court, there are no more contingencies "of future administrative actions."  *Id.*  Moreover, none of the reasons giving the Supreme Court pause in *Standard Oil* are present here.  Because no agency proceedings are pending, judicial review would not "interfere[] with the proper functioning of the agency" and would not deny "the agency an opportunity to correct its own mistakes and to apply its expertise."  *Std. Oil Co.*, 449 U.S. at 242.  There is also no risk of "unnecessary" "piecemeal review" while administrative proceedings are pending.  *Id.*

Thus, because no future administrative actions are outstanding, the FTC's determination that it had statutory grounds to file a lawsuit against Plaintiffs and decision to file the Complaint against Plaintiffs was a final agency action under the APA.  *See, e.g.*, *FTC v. Nat'l Urological Group*, CIVIL ACTION NO. 1:04-CV-3294-CAP, 2005 U.S. Dist. LEXIS 57382, at *47 (N.D.

Ga. June 24, 2005) (finding that the FTC's decision to file an enforcement action in district court was a final agency action).

> **B.  Plaintiffs' APA Claim in Count I Is Not an Available Defense in the FTC's Enforcement Action and, Thus, There Are No Other Adequate Remedies in Court as to Count I.**

The APA allows judicial review when there is "no other adequate remedy in a court" for unlawful final agency actions. 5 U.S.C. § 704. The FTC claims that the APA counts should be dismissed because Plaintiffs could purportedly present them as defenses in the FTC's enforcement action.

But, Count I of Plaintiffs' APA claim asserts that the FTC's decision to file its enforcement action was arbitrary, capricious, and an abuse of discretion. ECF 39 ¶¶ 30-35 (seeking that the decision be set aside). Plaintiffs are unaware of any factual or affirmative defense available that would allow Plaintiffs discovery into the administrative record in order to demonstrate the FTC's abuse of discretion, which requires demonstrating that the FTC "relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made." *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 928 (11th Cir. 1997) (internal quotation marks and citations omitted). Indeed, it is unlikely that this Court would provide for injunctive relief (to set aside an agency decision) via an affirmative defense. And, crucially, Plaintiffs worry whether this Court would state that it "may not substitute its judgment for that of the agency," *id.*, outside of APA judicial review.

Certainly, a factual defense would allow the Plaintiffs to challenge *whether* the FTC had a reason to believe, i.e., whether it existed, but without an APA action, Plaintiffs doubt that this

court would insert itself into the merits of an agency's decisionmaking and allow Plaintiffs to challenge the arbitrariness and capriciousness/abuse of discretion of the action on defense.[2]

      **C.     Section 13(b) of the FTC Act Provides a Meaningful Standard by Which This Court Can Judge the FTC's Abuse of Discretion; Contrary to the Motion to Dismiss, Complete Discretion Has Not Been Committed to the Agency by Law.**

The APA establishes a "basic presumption" in favor of judicial review, *Abbott Laboratories*, 387 U.S. at 140, for "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof," 5 U.S.C. § 702, unless such "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court has observed a would-be inherent tension between the exception to judicial review in § 701(a)(2) and § 706(2)(A), which provides for judicial review of agency actions that are arbitrary, capricious, or an abuse of discretion. *Chaney*, 470 U.S. at 829. The Court resolved the tension by construing the exception in § 701(a)(2) to apply only when "no judicially manageable standards are available for judging how and when an agency should exercise its discretion, [because] then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id.* at 830.

In its Motion to Dismiss, the FTC entirely skips over the requisite question of whether the FTC Act provides this Court with a "judicially manageable standard." Mot. 9-10. Instead, the Motion relies on sweeping claims that "traditionally" the decision to bring an enforcement action is an act of agency discretion and even likens the FTC to a criminal prosecutor. *Id.*

---

      [2] It also bears emphasizing that judicial resources will not be wasted allowing the APA claims to go forward. The FTC's enforcement case and the Plaintiffs' APA/DJA case have been consolidated and Plaintiffs do not envision any additional burdens on this Court as a result of their lawsuit, except for of course prosecuting Count I, which requires inquiries beyond the statutory construction of the FTC Act.

Contrary to the FTC's implications, there is no "presumption of unreviewability" to affirmative decisions made by an agency, as opposed to a decision to not take action. *Animal Legal Def. Fund v. United States Dep't of Agric.*, 789 F.3d 1206, 1214-15 (11th Cir. 2015) (holding that the USDA's decision was not committed to agency discretion by law because the applicable statute provided "'meaningful standards' against which to judge USDA's exercise of discretion"). Rather, "to 'honor the presumption of review, [the Supreme Court has] . . . read the exception in §701(a)(2) quite narrowly.'" *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 139 S. Ct. 361, 370 (2018)).

Quite plainly, there is "law to apply" in the FTC Act by which this Court can determine that the FTC abused its discretion in affirmatively deciding to file its lawsuit against Plaintiffs. Section 13(b) provides constraints on the FTC's ability to file a lawsuit to seek an injunction – it is not left to complete discretion. The FTC's discretion is constrained because it must have "reason to believe" certain violations of law are ongoing or imminent and "reason to believe" that it would be in the public interest to enjoin such violations pending administrative proceedings. 15 U.S.C. §53(b). This Court would then review whether the FTC "relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made," *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 928 (11th Cir. 1997) (internal quotation marks and citations omitted), when it determined that violations of the law are ongoing or imminent and that it would be in the public interest to enjoin such violations pending administrative proceedings. Thus, complete discretion was not delegated to the FTC by Congress and the FTC's decision to file its lawsuit is an affirmative agency action not shielded from judicial

review. *See, e.g.*, *Gurbisz v. United States Immigr. & Naturalization Serv.*, 675 F. Supp. 436, 443-44 (N.D. Ill. 1987) ("[A]gency decisions to institute enforcement proceedings are presumptively reviewable . . . and will be subject to review under, at least, an arbitrary and capricious standard, absent clear and convincing evidence of legislative intent to preclude review." (citing *Chaney*, 470 U.S. at 829-852; *Abbott Laboratories*, 387 U.S. at 141)).

Accordingly, for the reasons set forth above, the Motion to Dismiss should be denied with respect to Plaintiffs' APA claims.

### III. THE MOTION TO DISMISS PLAINTIFFS' DJA CLAIMS SHOULD BE DENIED.

The FTC's purported grounds to seek dismissal of Plaintiffs' DJA claims for lack of subject matter jurisdiction are less clear. Mot. at 10-15. The FTC appears to be arguing that this Court lacks subject matter jurisdiction to hear the DJA claims, that the DJA claims are unripe, and that, regardless of the foregoing, the district court should simply just decline to entertain the DJA claims in its discretion. *Id.* As set forth below, however, the motion is misguided and should be denied.

#### A. This Court Has Subject Matter Jurisdiction over the DJA Claims Because There is Federal Question Subject Matter Jurisdiction.

This Court has federal question subject matter jurisdiction over Plaintiffs' DJA claims because they arise under the FTC Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 1601 *et seq.* ("Telemarketing Act"). *See* 28 U.S.C. § 1331.

In claiming there is a lack of subject matter jurisdiction, the FTC misunderstands the authority to which it cites. In *Continental Bank & Trust Co. v. Martin*, 303 F.2d 214, 215 (D.C. Cir. 1962), the United States Court of Appeals for the District of Columbia Circuit was ***not*** holding that if a district court finds a lack of final agency action in an APA claim that it must

likewise find lack of subject matter jurisdiction in a DJA claim. Rather, it was observing that the DJA functions only to provide an additional remedy for federal court litigants, i.e., declaratory relief, but that an independent basis for subject matter jurisdiction would still be needed for DJA claims. *Id.*; *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (explaining that the DJA enlarged remedies available in federal court to include declaratory relief, but that the jurisdictional requirements of diversity or federal question had not been altered). Here, there is undoubtedly federal question jurisdiction for the DJA claims.

Neither the 1997 Fourth Circuit opinion, *Volvo GM Heavy Truck Corp. v. U.S. DOL*, nor the 1983 Seventh Circuit opinion, *General Finance Corp. v. FTC*, cited by the FTC, alter the necessary conclusion that Plaintiffs' DJA claims have federal subject matter jurisdiction. Both cases deal with a plaintiff's failure to exhaust the administrative remedies in the underlying statute before filing suit.³ *Volvo GM*, 118 F.3d 205, 208-10 (4th Cir.1997); *General Finance Corp.*, 700 F.2d 366, 367-68 (7th Cir. 1983).⁴ In *General Finance Corp.*, the court of appeals

---

³ Even in the two cases cites by the FTC were on point, recent unanimous Supreme Court case law suggests they have been abrogated to the extent they consider exhaustion of remedies issues jurisdictional. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("We hold that Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction)." (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004))); *see, e.g.*, *Garcia v. Limon*, CIVIL ACTION NO. 1:19-cv-120, 2019 U.S. Dist. LEXIS 224231, at * 11 (S.D. Tex. Nov. 4, 2019) ("The Court is mindful of the Supreme Court's admonition that there is a distinction between 'jurisdictional prescriptions and nonjurisdictional claim-processing rules,' the latter of which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.' . . . Given that Congress did not expressly mandate an exhaustion requirement in the statute, the Court should treat the failure to exhaust remedies as a nonjurisdictional defect." (quoting *Fort Bend Cnty.*, 139 S. Ct. at 1850 (when Congress does not expressly make a requirement jurisdictional in nature, "courts should treat the restriction as nonjurisdictional in character"))).

⁴ The Motion to Dismiss misrepresents the Fourth Circuit's "holding" in *Volvo GM*. The FTC states that "in *Volvo GM Heavy Truck Corp.*, the Fourth Circuit **held** that a plaintiff could not 'bypass' **the APA** requirements 'by simply bringing declaratory judgment actions in federal

held that the companies being subjected to FTC investigation and civil investigative demands under the FTC Act filed their declaratory relief actions prematurely because they "must wait till the government sues to enforce a subpoena or other compulsory process in the aid of the investigation, since that is the method of judicial review of FTC investigations that Congress has prescribed." 700 F.2d at 368. Of course, neither pending investigations nor administrative processes are at issue here. Indeed, the FTC bypassed its own administrative proceedings in this case and proceeded directly to district court against Plaintiffs; thus, it cannot be contended that Plaintiffs have failed to exhaust administrative remedies under the FTC Act before filing their DJA claims.

> **B. Assuming *Arguendo* the Ripeness Doctrine Applies, Under the *Abbott Laboratories* Two-Prong Framework, Plaintiffs' DJA Claims Are Ripe for Adjudication.**

The Motion to Dismiss attacks the DJA claims under the ripeness doctrine, as discussed in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). In *Abbott Laboratories*, the Supreme Court rejected the government's arguments that claims were not ripe and instead found that the declaratory relief actions filed by the plaintiffs who sought review of the Commissioner of Food and Drugs' interpretation of statutory authority to be fit for judicial review because of the finality of the Commissioner's regulation and its impact on plaintiffs' operations. *Id.*

Although related to considerations of the APA's final agency action requirement, as the Supreme Court explains the ripeness doctrine, the doctrine is distinguishable:

---

court." Mot. at 11 (emphasis added). In reality, the Fourth Circuit observed that the Supreme Court had held under an analogous fact pattern that a plaintiff had not exhausted his administrative remedies required by the **Medicare Act** and therefore could not prematurely seek declaratory relief. *See Volvo GM*, 118 F.3d at 210 ("Moreover, analogically, as the Supreme Court recognized in *Heckler v. Ringer*, 466 U.S. 602, 80 L. Ed. 2d 622, 104 S. Ct. 2013 (1984), a party cannot 'bypass the exhaustion requirements of the Medicare Act by simply bringing declaratory judgment actions in federal court.'"). Again, there is no contention that Plaintiffs have failed to exhaust their administrative remedies.

> The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Id.* at 148-49.

Given that the Supreme Court describes the ripeness doctrine's rationale to prevent courts from meddling prematurely in pending policy decisionmaking, *see id.*, the doctrine arguably does not apply to Plaintiffs' DJA claims. No pending rulemaking is at issue in this case and the Plaintiffs' DJA action does not seek to interject the court's opinion on pending policy determinations. Thus, this Court could dispense with this line of argument straight away.

Notwithstanding, assuming for the sake of argument that the ripeness doctrine would apply to the FTC's decision to initiate a lawsuit against Plaintiffs, Plaintiffs' DJA claims are ripe under the two-prong framework provided by the Supreme Court in *Abbott Laboratories*: that the court "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149.

First, like the issue in *Abbott Laboratories*, the issues presented in Plaintiffs' DJA claims are purely legal ones involving statutory interpretation. *Id.* Similarly, in finding fitness for review, the Supreme Court noted that "[no] further administrative proceedings [were] contemplated." *Id.* The Supreme Court also took under consideration that the regulations at issue were "final agency actions" within the meaning of the APA. *Id.* As previously explained, given that the Commissioners' vote to file this lawsuit marked the culmination of the FTC's

12

decisionmaking and no further administrative proceedings remain, the DJA claims address a final agency action. *See* Sec. II.A. *supra*.

Second, Plaintiffs will suffer hardship if this Court does not consider its DJA actions. Counts V-VII seek a declaration construing the FTC Act and the Telemarketing Act's statutory authorities. Although the FTC pooh-poohs these claims as redundant to its defenses to the FTC's enforcement action, Mot. 13, the Plaintiffs will suffer harm by not being able to prosecute their DJA counts according to their own strategy and timing. Plaintiffs continue to operate their telemarketing business, having revamped their policies and procedures last fall before the FTC filed its lawsuit in February 2022. ECF 39 ¶¶ 16-28. The FTC's enforcement action is all for naught if the FTC has, as Plaintiffs allege in their DJA claims, exceeded their statutory authorities and are seeking relief that is not available to the Commission on these facts. Dismissal now would bar Plaintiffs from proactively pursuing these claims, including by an anticipated motion for summary judgment as a matter of law, which would be dispositive of the enforcement case as well. Plaintiffs will be harmed by having to suffer through their defense of the FTC's ultra vires enforcement action.

Finally, the FTC contends that Plaintiffs' seventh count is unripe because it purportedly seeks an "advisory opinion" that implied preliminary injunctive relief that is ancillary to §13(b) of the FTC Act is unavailable. The relief sought by Plaintiffs is hardly an advisory one. The FTC fails to acknowledge that it expressly seeks implied, ancillary preliminary injunctive relief in its enforcement action. *See* ECF 1 Prayer B.

Thus, even though the ripeness doctrine is arguably inapplicable to the circumstances of this case, since an agency regulation is not at issue, Plaintiffs' DJA actions still meet the

13

qualifications of a case fit for adjudication under *Abbott Laboratories* and the Motion to Dismiss should be denied.

      **C.    The FTC's Arguments Asking This Court to Decline to Entertain the DJA Actions Rely on Inapposite Case Law and Should Be Rejected.**

In its final argument, appealing to this Court's discretion, the FTC relies on inapposite cases involving pending parallel state and federal proceedings, *see* Mot. 13 (citing *Nat'l Trust Ins. Co. v. S. Heating & Cooling, Inc.*, 12 F.4th 1278, 1283-84 (11th Cir. 2021)), and equally inapposite cases involving pending parallel proceedings in different federal courts, *see id.* at 13-14 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)), to convince this court to dismiss Plaintiffs' declaratory relief claims based on factors entirely inapplicable to the enforcement action and Plaintiffs' APA/DJA action, which have both already been consolidated in the same district court before the same judge. In short, the factors on a "motion to transfer" or "motion to stay" pending a parallel proceeding that the FTC posits as relevant are wholly irrelevant as there are no concerns here of forum shopping.

The FTC also bemoans the reality that a final order on the merits of Plaintiffs' APA/DJA Complaint would be appealable directly to the Eleventh Circuit. It hopes this Court will sympathize with the government and on this ground dismiss the APA/DJA Complaint. It is all a matter of perspective, though. The FTC wants to avoid justifying its overly-expansive views of its authorities to the Eleventh Circuit and prefers to subject Plaintiffs to defending the enforcement case only, delaying the inevitable appeal. From Plaintiffs' perspective, as a matter of judicial economy, it is not a negative thing for a final decision to be rendered on the FTC's ultra vires actions sooner, since the APA/DJA claims are dispositive of the enforcement action. Thus, in its discretion, this Court should allow the DJA claims to proceed. The Motion to Dismiss should, accordingly, be denied.

## IV. CONCLUSION

WHEREFORE, the FTC's Motion to Dismiss should be denied.  As set forth above, the Motion to Dismiss presents no legal bar to judicial review of Plaintiffs' APA claims or their DJA claims.

Date: May 2, 2022                                                   Respectfully submitted,

/s/ *Carl Taylor Smith*

| | |
|---|---|
| Mitchell N. Roth (admitted *pro hac vice*) | Carl Taylor Smith |
| Virginia State Bar No.: 35863 | Florida Bar No.: 1003543 |
| Genevieve C. Bradley (admitted *pro hac vice*) | ROTH JACKSON GIBBONS CONDLIN, PLC |
| Virginia State Bar No.: 83325 | 1519 Summit Avenue, Suite 102 |
| Gregory M. Caffas (admitted *pro hac vice*) | Richmond, VA 23230 |
| Virginia State Bar No.: 92142 | tsmith@rothjackson.com |
| ROTH JACKSON GIBBONS CONDLIN, PLC | Telephone: 804-729-4440 |
| 8200 Greensboro Drive, Suite 820 | Facsimile: 804-441-8438 |
| McLean, VA 22102 | |
| Telephone: 703-485-3535 | |
| Facsimile: 703-485-3525 | |
| mroth@rothjackson.com | |
| gbradley@rothjackson.com | |
| gcaffas@rothjackson.com | |

*Counsel for American Vehicle Protection Corp., Tony Gonzalez, Tony Gonzalez Consulting Group, and CG3 Solutions, Inc. f/k/a My Protection Plan Inc., and Charles Gonzalez*

## **CERTIFICATE OF SERVICE**

I certify that on May 2, 2022, a copy of the foregoing document was served on all counsel of record via ECF, pursuant to the Federal Rules of Civil Procedure.

*/s/ Carl Taylor Smith*
Carl Taylor Smith