## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case 0:22-cv-60298-RAR**

**FEDERAL TRADE COMMISSION,**

                **Plaintiff,**

v.

**AMERICAN VEHICLE PROTECTION CORP., et al.,**

                **Defendants.**

### PLAINTIFF/DEFENDANT AMERICAN VEHICLE PROTECTION CORP.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Pursuant to Magistrate Judge Strauss's Paperless Order dated September 19, 2022, ECF No. 75, Plaintiff/Defendant American Vehicle Protection Corp. ("AVP") by counsel, respectfully submits the following Memorandum of Law briefing the privileges claimed by the Federal Trade Commission ("FTC") in response to AVP's Requests for Production Nos. 1 and 2.

**I.    INTRODUCTION**

For its enforcement action against AVP for alleged telemarketing violations filed on February 8, 2022, the FTC relied on the statutory authority in Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate its lawsuit seeking injunctive relief.  To file a lawsuit under Section 13(b), the FTC's Commissioners must have had "***reason to believe*** [] that any person . . . is violating, or is about to violate, any provision of law enforced by the [FTC, and] . . . that the enjoining thereof . . . would be in the interest of the public."  15 U.S.C. § 53(b) (emphasis added).

Yet, AVP embarked upon an extensive remediation of its telemarketing operations in November 2021—about 3 months before the Commissioners voted in favor of filing the Section

13(b) action in February 2022. Specifically, AVP completely shut down operations for a week and hired a third-party compliance monitoring company to retrain AVP employees, develop new scripts, and review all calls resulting in sales—and failing any calls that failed to follow the approved scripts. *See* Declarations of Tony Gonzalez (of AVP) and Sarah Johnson (of third party Zero Variance) attached hereto as **Exhibit A**. Meanwhile, the FTC was relying on the words of a serial fraudster and felon named Joseph Serian a.k.a. Joe Seriani to substantiate its draft complaint. *See* Declaration of Joseph Serian dated July 31, 2021 attached hereto as **Exhibit B**. Mr. Seriani has an extensive rap sheet, but most notably he has been convicted of obstruction of justice for lying to two U.S. District Court Judges and lying to a U.S. Attorney. *See United States v. Seriani*, No. 96-4899, 1997 U.S. App. LEXIS 31845, at *1-2 (4th Cir. Nov. 12, 1997) ("Defendant Joseph Seriani was convicted of three counts of obstruction of justice and one count of conspiracy for attempting to obtain the premature release of three federal prisoners by sending false letters to two United States District Judges and one United States Attorney."). Furthermore, during his deposition in this case, he repeatedly acknowledged that he lacked the first-hand knowledge he purported to have in his declaration, admitted he changed his testimony to fit the FTC's story, admitted to a whole host of convictions, and admitted to having been addicted to crack cocaine, among other various reasons to seriously reject his credibility. A true, accurate copy of the transcript of Joseph Serian's deposition is attached hereto as **Exhibit C**.

In light of these facts, one of AVP's central defenses is whether the Commissioners had "***reason to believe***" there were ongoing or imminent violations necessitating an injunction for the sake of the public interest on February 8, 2022 when it voted to file the FTC's Section 13(b) action. Also, in light of the foregoing facts, AVP filed its own lawsuit under the Administrative

Procedures Act ("APA"), 5 U.S.C. § 706, to set aside the lawsuit because the Commissioners' decision-making in filing the lawsuit without "***reason to believe***" was arbitrary and capricious.

Accordingly, AVP served the FTC with the following two requests for documents:

**Request No. 1:** The FTC's administrative record related to the Complaint filed by the FTC.

**Request No. 2**: All documents reflecting factual allegations presented to the Commissioners for consideration in advance of the Commissioners' vote to file the Complaint.

Joint Discovery Status Report, at 2-3, ECF No. 74.  In response to RFP 1, the FTC ultimately produced what the FTC claimed was "the only record of the Commission's decision in this case[,] . . . the vote sheet approving the complaint[.]"  *See id.* at 2; *see also* true, accurate copy of the record produced, which the FTC is calling a "vote sheet," but which is titled "Motion to Authorize the Staff to File a Section 13(b) Complaint" ("Motion to File") attached hereto as **Exhibit D**.  Otherwise, however, the FTC stood on its objections, including claims of attorney-client privilege, work product privilege, and deliberative process privilege.  *See* ECF No. 74. The FTC finally served a privilege log with substantive entries on September 18, 2022—the eve of a hearing with Magistrate Judge Strauss regarding these two requests for documents.  That log contained 5 entries—including two memoranda—and is attached hereto as **Exhibit E**.

During the September 19, 2022 hearing with Magistrate Judge Strauss, AVP counsel emphasized that it was ***only seeking the facts presented to the Commissioners*** for the purposes of its vote to file the Section 13(b) lawsuit.  AVP counsel questioned how the Motion to File could possibly be the complete administrative record when the record both references a "related document" and hyperlinks to "attachments."  *See* Ex. D, Mot. to File, at 1, 4.  FTC counsel represented that there was, in fact, no "related document" despite what the Motion to File said on its face.  FTC counsel also represented that the only "attachments" to the Motion to File were the

3

two memoranda being withheld on the basis of attorney-client privilege, work product privilege, and deliberative process privilege. *See* Ex. E, Priv. Log.

Magistrate Judge Strauss ordered the parties to meet and confer for at least an hour regarding the FTC's claims to privilege and, failing resolution, to file simultaneous briefs regarding the FTC's privilege assertions. Counsel for AVP and the FTC conferred remotely for over an hour to no avail. *See* Sec. II, Meet and Confer Summary & Results *infra*. On the eve of this brief's due date, i.e., last night, counsel for the FTC surprised AVP by serving a ***new*** privilege log containing at least ***twenty*** new entries that had not been previously disclosed. A true, accurate copy of the latest privilege log is attached hereto as **Exhibit F**.

The bottom line is this: the administrative record, as defined by the Supreme Court, would clearly include the two memoranda attached to the Motion to File. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (holding that judicial review of the administrative record "is to be based on the full administrative record that was before the Secretary at the time he made his decision"); *see also* 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party[.]"). Despite the frustration of receiving a substantively different privilege log at the eleventh hour, AVP is not interested in other potentially privileged communications between the Commissioners' own staff attorneys and others. AVP's defenses and its APA claim necessitate production of the factual record relied upon for the Commissioners' vote on the Motion to File. As the FTC represented, the Motion to File ***is*** the administrative record—this Court must compel the FTC to produce the ***complete record***, i.e., the memoranda attached to the Motion to File.

## II.     MEET AND CONFER SUMMARY & RESULTS

Following Magistrate Judge Strauss's Paperless Order, ECF No. 75, counsel for the FTC (Matthew Hoffman, Harold Kirtz, and Hans Clausen) and counsel for AVP (Genevieve Bradley, Mitchell Roth, Taylor Smith, and Greg Caffas) held a conference on September 23, 2022 to discuss further the privileges being claimed by the FTC in its privilege log produced September 18, 2022.[1]  *See* Ex. E.

Although AVP's counsel tried their respective bests to (1) remind the FTC that it bears the burden to establish all the privileges it has invoked, as well as the burden to prove non-waiver; (2) identify the various statements of law (with case citations) on which AVP was relying, (3) provide examples of analogous cases, and (4) discuss issues surrounding whether in fact an attorney-client relationship existed and whether the purported confidential communications were actually kept confidential, FTC counsel was focused on whether AVP counsel could identify a case with identical facts to those before the court on which it could rely. That, of course, is not the standard.

There was one curious moment of importance, however.  Attorney Bradley (AVP counsel) asked how the FTC could establish that the memorandum from Harold Kirtz and Hans Clausen ("Kirtz Memo") could be considered a confidential communication between attorney and client if the Kirtz Memo was ***also sent to the FTC's public affairs office.***  *See* Ex. E, Priv. Log (identifying Mitchell Katz from public affairs as a recipient).  Attorney Hoffman expressed shock as he had not realized that the public affairs office was listed as a recipient of the Kirtz Memo in the FTC's privilege log.  Tellingly, he then claimed it was likely a mistake and that

---

[1] The conference lasted over an hour.  The conference was an exercise in patience for AVP's counsel.  FTC Counsel did most of the speaking to the exclusion of others and repeatedly provided unproductive comments that AVP's arguments are "silly," in "bad faith," and putting AVP counsel's "licenses to practice" in jeopardy.

they would send a revised log. At 10:07 a.m. on September 29, 2022, the day before this brief was due, Attorney Hoffman emailed AVP counsel the following:

> We have confirmed that the two recommendation memoranda were sent to Mitchell Katz in the FTC's Office of Public Affairs. This was done in accordance with standard agency practice to enable OPA to be informed about the case. As I said, these memos were not disclosed to anyone outside the FTC. As we discussed during the meet-and-confer, we are not aware of any authority that would suggest that circulation of these materials to agency personnel who need them to do their job would call into question the confidentiality of the materials or result in an implied waiver of the attorney-client privilege.

*See* Sept. 29, 2022 email chain attached hereto as **Exhibit G**. Now, apparently, public affairs had not only received the Kirtz Memo, but also the memorandum authored by the Director of the Bureau of Consumer Protection, Samuel Levine ("Levine Memo"). *See* Ex. G (confirming Mr. Katz in public affairs had received "the two" memoranda). AVP counsel requested copies of the transmittal correspondence to the public affairs personnel so that AVP could further investigate whether such memos were actually confidential communications between client and attorney. *See id*. AVP's counsel received no response or documentation.

At 6:01 p.m. on September 29, 2022, FTC attorney Mr. Clausen served yet another privilege log, *see* Ex. F, which is substantially different than the 5-item log over which the parties had conferred. *Compare* Ex. E and Ex. F. The latest log contains numerous new entries that were never previously identified or discussed with Magistrate Judge Strauss or among the parties. But, more crucially, the content in the Addressee/Recipient column was revised with respect to the Kirtz and Levine Memos. The latest log clarifies to whom the memos were addressed; that is, "[t]he Commission (sole addressee)." Language is also inserted: "Other FTC staff who received a copy are: . . . [list follows, concluding with] Mitchell Katz, Public Affairs Specialist, Office of Public Affairs, FTC." The FTC did not produce the emails transmitting the

6

memoranda to these various parties, including Mitchell Katz, nor did it log those transmittals as privileged.

## III.     ARGUMENT

The FTC's counsel has made clear that it intends to rely on *SEC v. Merkin*, CASE NO. 11-23585-CIV-GRAHAM/GOODMAN, 2012 U.S. Dist. LEXIS 103667 (S.D. Fla. June 29, 2012) because the District Court sided with the government and denied a motion to compel production of an SEC action memorandum.  The case is distinguishable: the applicability of the attorney-client privilege itself was not challenged, nor was there an argument that the SEC impliedly waived its privilege, as AVP argues below in Sections III.A and B; rather, the movant in *Merkin* simply assumed the privilege applied and made a weak plea for a redacted version of the privileged memo.  *Merkin*, 2012 U.S. Dist. LEXIS 103667, at *18-21.  Moreover, regarding work product and the deliberative process privilege, the movant failed to demonstrate a substantial need for a redacted version of the memo.  *Id.* at *8-17.  In fact, the court observed that he was "silent on the point." *Id.* at *13.  Although at first glance, the case seems like a gift to the FTC, the parallels are superficial.  As set forth below, this Court should compel the production of the Kirtz and Levine Memos.

>    **A.     The FTC Cannot Meet Its Burden to Establish Attorney-Client Privilege Because the Memos Were Not Kept Confidential and Because They Were Not Written by Persons Acting in Their Capacity as Counsel to the Commissioners.**

The FTC, in claiming attorney-client privilege, "has the burden of establishing (1) the existence of an attorney-client relationship and (2) the confidential nature of the information sought."  *United States v. Moore, Ingram, Johnson & Steele, LLP*, 2022 U.S. App. LEXIS 21728, at *7 (11th Cir. Aug. 5, 2022).

    1. <u>The FTC has not established that the Kirtz and Levine Memos are confidential communications between attorney and client</u>.

The FTC cannot meet its burden to establish that the Kirtz and Levine Memos were confidential communications between attorney and client. The latest privilege log, *see* Ex. F, shows that the memos were circulated to numerous parties, including—by way of example—Mitchell Katz, Public Affairs Specialist, Office of Public Affairs for the FTC. To the extent the FTC attempts to argue the memo was only circulated among high level employees, the argument strains logic because Mr. Katz serves as neither Director nor Deputy Director of the Office of Public Affairs.[2] It further strains logic to assert that a mid-level employee in the Office of Public Affairs needs to be aware of the legal reasoning and advice provided to the Commissioners.

Moreover, the attorney-client privilege does not attach to communications that a client intends its attorney to impart to others. *See United States v. Patel*, CASE NO. 2:08-CR-210-WKW [WO], 2010 U.S. Dist. LEXIS 17548, at *15 (M.D. Ala. Feb. 26, 2010) ("Courts have refused to apply the [attorney-client] privilege to information that the client intends [its] attorney to impart to others." (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976))); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions handed down by the Fifth Circuit prior to October 1, 1981); *see also Zarrella v. Pac. Life Ins. Co.*, CASE NO. 10-650754-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 58624, at *8-9 (S.D. Fla. May 31, 2011) (holding that an attorney's opinion letter was not an attorney-client privileged communication because the client and attorney "did not intend that it be kept confidential . . . [i]t was understood that the opinion letter would not be a confidential communication but rather that it could be shared with" others).

---

  [2] *See* organizational chart for the FTC Office of Public Affairs attached hereto as **Exhibit H**, located at https://www.ftc.gov/system/files/attachments/office-public-affairs/opa_org_chart.pdf.

As previously noted, undersigned counsel has requested copies of the transmittals to Mr. Katz in order to evaluate confidentiality, but that request has not been satisfied. *See* Ex. G. In fact, the FTC has not produced any of the transmittals to the various recipients that apparently also received the memos. It is unclear whether there were instructions to maintain confidentiality, whether the memos were forwarded further on, whether and how one could access the documents from within the Commission, and generally what measures, if any, the FTC has taken to maintain the purported confidentiality of the memos. From the face of the log, it is quite plain the memos were not confidential communications between attorney and client.

2. <u>The FTC has not established that an attorney-client relationship existed between the memos' authors and the Commissioners themselves.</u>

The FTC has likewise failed to establish that an attorney-client relationship existed between the memos' respective authors and the Commissioners themselves. Not every attorney in the FTC acts as counsel to the Commissioners themselves. In the Eleventh Circuit, the FTC bears the burden to show that Mr. Levine, as well as Mr. Kirtz/Mr. Clausen, were acting as counsel for the Commissioners in connection with their memoranda. *See Doe v. Sch. Bd.*, Case No. 18-25430-CIV-O'SULLIVAN, 2020 U.S. Dist. LEXIS 47561, at *3 (S.D. Fla. Mar. 19, 2020) (citing *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990)); *cf. Ocampo v. Harrington*, No. 14-3134, 2015 U.S. Dist. LEXIS 108157, at *6 (C.D. Ill. Aug. 17, 2015) ("[A]ttorney-client privilege does not apply when [government] attorneys are not acting as attorneys, but rather are performing administrative or regulatory functions." (citing *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995))).

Of course, AVP cannot opine on the contents of the memoranda because they have been withheld. But, as the attached, publicly available organization charts demonstrate,[3] neither Mr. Kirtz/Mr. Clausen nor Mr. Levine report to the Commissioners themselves. The Office of General Counsel does. The Commissioners' own staff attorneys clearly do. But, Mr. Kirtz and Mr. Clausen are FTC attorneys in the Southeast Region (Atlanta) office reporting to the Director of the FTC's Bureau of Consumer Protection ("BCP"), Samuel Levine. In turn, the BCP, which Mr. Levine heads, does not report directly to the Commissioners, although other bureaus and offices plainly do (i.e., Office of the General Counsel, Office of the Executive Director, and Bureau of Economics).[4] BCP is the FTC bureau that drives consumer protection policy. AVP cannot speak to the contents of the memos from BCP. Presumably, they serve the purpose of pushing an administrative and/or policy agenda, which would not be privileged. Any legal advice would be provided to the Commissioners by their own staff attorneys – not by BCP attorneys or BCP administrators who happen to be attorneys.

    **B.**    **Notwithstanding, to the Extent Attorney-Client or Work Product Privilege Applies, the FTC Has Waived the Privileges.**

As noted above, it is unclear to what extent the Kirtz and Levine Memos at issue have been shared beyond the Commissioners and their staff attorneys. But, even to the extent attorney-client and/or work product privilege can attach, the FTC waived such privileges by filing suit against AVP—thereby placing the factual content of the Kirtz Memo and the Levine Memo at issue. The FTC bears the burden to prove non-waiver of the privilege. *Diamonds*

---

[3] The BCP's organizational chart is attached hereto as **Exhibit I** and can be found here: https://www.ftc.gov/system/files/attachments/bureau-consumer-protection-organization-chart/bcp-org-chart.pdf. The FTC's organizational chart is attached hereto as **Exhibit J** and can be found at: https://www.ftc.gov/system/files/attachments/about-ftc/ftc_org_chart.pdf.

[4] A careful review of the FTC's organizational chart, Ex. J, shows no chain of command (no line on the illustration) from BCP to the Chair of the Commission.

*Resorts U.S. Collection Dev., LLC v. US Consumer Attorneys, P.A.*, 519 F. Supp. 1184, 1197 (S.D. Fla. 2021) ("In addition to demonstrating the elements required to initially establish the [attorney-client] privilege, the asserting party must prove it has not waived the privilege." (citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990))).

Under the theory of implied waiver, "a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense." *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (citation omitted).

The act of filing suit is an example of such an affirmative act. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) ("First, the court considers whether the party is asserting the privilege as the result of some affirmative act, **such as filing suit**." (emphasis added) (internal quotations omitted)). To file a lawsuit under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Commissioners must have had "**reason to believe** [] that any person . . . is violating, or is about to violate, any provision of law enforced by the [FTC, and] . . . that the enjoining thereof . . . would be in the interest of the public." By way of reminder, the full title of the Motion to File is in fact "Motion to Authorize the Staff to File a Section 13(b) Complaint."

By filing a lawsuit under this authority, the FTC has thrust the Commissioners' "reason to believe" into the epicenter of its own enforcement action, as well as AVP's APA action (i.e., whether the agency vote authorizing the lawsuit was arbitrary and capricious, among other things). The ***only*** attachments to the Motion to File were the two memos the FTC now seeks to withhold—the very documents that would illustrate the FTC's "reason to believe." This Court

has stated that the "[k]ey to determining that a [waiver of privilege] has occurred [] is reliance on the information sought, to the detriment of the moving party by the party invoking the privilege." *FTC v. Timeshare Mega Media & Mktg. Group*, Case No. 10-62000-CIV-ZLOCH/ROSENBAUM, 2011 U.S. Dist. LEXIS 140666, at *26 (S.D. Fla. Dec. 7, 2011). In *FTC v. Timeshare*, this Court observed:

> [T]he FTC plainly relied upon Agent Roberts's Declaration in seeking its *Ex Parte* Temporary Restraining Order. Were we still at the temporary-restraining-order stage of the proceedings, a [waiver of privilege by the FTC] could well have been found with respect to Agent Roberts's Declaration.

*Id.* at 26-27; *see also Chick-Fil-A v. ExxonMobil Corp.*, CASE NO. 08-61422-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 109588, at *34 (S.D. Fla. Nov. 10, 2009) ("Fairness may compel a finding of an implied waiver when a party asserts a claim or defense that requires examination of protected communications." (internal quotations omitted)).

Indeed, if, under FRCP 8, the FTC must *allege* that it had "reason to believe" in its Section 13(b) Complaint, *see FTC v. Hornbeam Special Situations, LLC*, CIVIL ACTION FILE NO. 1:17-cv-3094-TCB, 2018 U.S. Dist. LEXIS 204340, at *18 (N.D. Ga. Oct. 15 2018) (holding that the FTC "must satisfy the Court under Rule 8 that it has a reason to believe that each of the Defendants is violating or is about to violate the law"), surely it follows that the FTC must then produce in discovery the very basis for the Commissioners' reason to believe—the Kirtz and Levine Memos—since the FTC has placed such reason to believe at issue to AVP's detriment.

> C. **The FTC's Invocation of the Qualified Privileges of Work Product and Deliberative Process Must Give Way to AVP's Compelling Need for the Factual Information in the Memos.**

"[W]ork product privilege is a qualified privilege that may have to yield to a compelling need for information that can only be found in the protected document." *Johnson v. Carnival*

*Corp.*, CASE NO.: 19-cv-23617-BLOOM/LOUIS, 2020 U.S. Dist. LEXIS 174547, at *6 (S.D. Fla. Sept. 23, 2020) (internal citation omitted).  Likewise, "[t]he deliberative process privilege is a qualified privilege and may be overcome where there is a sufficient showing of a strong need that outweighs the reasons for non-disclosure." *Kearney Partners Fund, LLC v. United States*, Case No. 2:10-cv-153-FtM-SPC, 2013 U.S. Dist. LEXIS 67797, at *18-19 (M.D. Fla. May 10, 2013) (internal citation omitted).  A court may redact an attorney's mental impression from a document protected by the work product doctrine or deliberative process privilege.  *See, e.g.*, *In re Collado*, CASE NO. 17-80121-CV-MARRA/MATTHEWMAN, 2017 U.S. Dist. LEXIS 122022, at *2-3 (S.D. Fla. Aug. 3, 2017) (ordering the production of work product documents in redacted form because such documents "may be produced in redacted form if factual information was not otherwise available and moving party showed substantial need and undue hardship"); *see also Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 106-107 (S.D.N.Y. 2002) ("[A] party should not be allowed to conceal critical, non-privileged, discoverable information, which is uniquely in the knowledge of the party and which is not obtainable from any other source simply by imparting the information from its attorney and then attempting to hide behind the work product doctrine after the party fails to remember the information. . . . At the very least, the documents should be produced in a redacted form . . . [and] if such a distillation becomes impossible then the entire comments of the documents must be produced." (internal citations and quotations omitted)).

The work product doctrine can be overcome when a "party shows that i[t] has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Khan v. United States*, CASE NO. 13-24366-CIV-ALTONAGA/O'SULLIVAN, 2015 U.S. Dist. LEXIS 88672, at *10-11 (S.D. Fla. July 8, 2015)

(citing Federal Rule of Civil Procedure 26(b)(3)(A)).  Similarly, the deliberative process privilege "may be overcome by a showing of need based on '(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable.'" *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, Case No. 9:17-cv-80495-Marra/Matthewman, 2019 U.S. Dist. LEXIS 197874, at *4 (S.D. Fla. Nov. 14, 2019) (quoting *Raffa v. Wachovia Corp.*, CASE NO.: 8:02-CV-1443-T-27-EAJ, 2003 U.S. Dist. LEXIS 28315, at *8-9 (S.D. Fla. May 15, 2003)).

To try and persuade this Court that there are other avenues to obtain these facts, the FTC will undoubtedly refer to its supplemental answers to Interrogatory No. 3, which asks the FTC to "[d]escribe in detail all facts that support your contention that as of the Complaint's filing you had 'reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.'"  *See* FTC's transmittal email and attached Supplemental Answer served September 29, 2022 at 8:20 p.m. attached hereto as **Exhibit K**.  The FTC surely hopes that this Court will be distracted by the length of its answer and miss the fact that the interrogatory has not actually been answered.  The FTC quite simply does not state the facts that gave the Commissioners' "reason to believe" there were ongoing or imminent violations by AVP.  The list appears to be a mishmash of consumer complaints and information gathered well before AVP revamped its operations in November 2021 and for those few items that appear to post-date AVP's efforts, the FTC cutely declines to state whether this information was adduced during discovery in this case (well after the decision to file this lawsuit) or—even more to the point—whether such information was ever presented to the Commissioners.  During the meet and confer

on September 23, 2022, AVP counsel asked the FTC whether it would answer an even more direct interrogatory that asked for all facts presented to the Commissioners in the memoranda attached to the Motion to File.  FTC's counsel stated it would invoke the same privileges.  One would assume the privileges would likewise be invoked on a 30(b)(6) deposition of the Commission.

Even if the FTC answered Interrogatory No. 3 more forthrightly, AVP would still need the memoranda in order to have before it the complete administrative record for the purpose of its APA claim. *See* 5 U.S.C. § 706.  Interrogatory No. 3 would only provide those facts **supporting** the FTC's contention that it had reason to believe there were ongoing or imminent violations of the law.  It would not provide the **complete administrative record** put in front of the Commissioners on the Motion to File, and disclose the scope of the facts presented—whether supportive, harmful, or neutral facts.  *Cf. Sierra Club v. U.S. Fish & Wildlife Serv.*, Case No: 2:20-cv-13-SPC-NPM, 2021 U.S. Dist. LEXIS 229742, at *6 (M.D. Fla. Dec. 1, 2021) (confirming that the administrative record should be produced in an APA claim, but observing that other deliberative process documents are generally not available absent some other showing of relevance); *see also Kahn v. United States*, CASE NO. 13-24366-CIV-ALTONAGA/O'SULLIVAN, 2015 U.S. Dist. LEXIS 75191, at *13 n.4 (S.D. Fla. June 10, 2015) (citing *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014) (finding the deliberative process privilege inapplicable to a number of documents where government decision-making at issue)) ("The [deliberative process] privilege . . . may be inapplicable where the deliberations are among the central issues in the case.").

The Kirtz and Levine Memos are the substance of the administrative record.  Without the disclosure of the facts presented therein, AVP is hamstrung.  Having demonstrated substantial

need for the memos, it is clear that the exception to the work product doctrine applies. *See* Fed. R. Civ. P. 26. For similar reasons, AVP has demonstrated that the qualified privilege of the deliberative process has been overcome – because the memos are not only relevant but ***central*** to both the FTC's authority to file its Section 13(b) lawsuit, but also to AVP's APA claim—and that there is not any other evidence available. The Kirtz and Levine memos are the sole attachments from the administrative record withheld. *See Ocwen Fin. Corp.*, 2019 U.S. Dist. LEXIS 197874, at \*3-4 (quoting *Raffa*, 2003 U.S. Dist. LEXIS 28315, at \*8-9) (identifying relevance of materials sought and unavailability of other evidence as factors to overcome deliberative process privilege). Moreover, both lawsuits present serious issues. *See id.* at 4 (identifying seriousness of litigation as factor to consider in overcoming deliberative process privilege). The FTC intends to make an example out of AVP, jeopardizing the livelihoods of individuals who worked very hard to right the ship last year. Meanwhile, AVP is seeking to prevent the FTC from exceeding its limits prescribed by Congress, which the Supreme Court has signaled is fair game. *See AMG Cap. Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021). The Court must also consider the role of the government in the litigation. *See Ocwen Fin. Corp.*, 2019 U.S. Dist. LEXIS 197874, at \*4 (quoting *Raffa*, 2003 U.S. Dist. LEXIS 28315, at \*8-9) (identifying role of the government as a pertinent inquiry). The FTC is not only the plaintiff in their enforcement action, but they have a statutorily prescribed decision to make – they must have "reason to believe" there were ongoing or imminent violations. Unlike the movant in *Merkin* who simply felt "entitled to know the 'facts,'" *Merkin*, 2012 U.S. Dist. LEXIS 103667, at \*13, AVP is seeking the administrative record that should have the FTC's demonstrative "reason to believe." Finally, this Court must consider "the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable." *See Ocwen Fin.*

*Corp.*, 2019 U.S. Dist. LEXIS 197874, at *4 (quoting *Raffa*, 2003 U.S. Dist. LEXIS 28315, at *8-9). AVP is not seeking internal, privileged emails. To the extent these formal memoranda are disclosed in this case, timidity should not result. Rather, authors of such memoranda should be empowered with the knowledge that their work is part of the record and should exemplify the government's best work when it is seeking to wield the government's powers against private citizens. Their work should not be both sword and shield.

## IV. CONCLUSION

WHEREFORE, AVP respectfully requests that this Court order the FTC to produce the Kirtz and Levine Memos in full, or if it so determines, to produce the same with legal guidance redacted.

Date: September 30, 2022                                  Respectfully submitted,

/s/ *Carl Taylor Smith*

Mitchell N. Roth (admitted *pro hac vice*)               Carl Taylor Smith
Virginia State Bar No.: 35863                            Florida Bar No.: 1003543
Genevieve C. Bradley (admitted *pro hac vice*)           ROTH JACKSON GIBBONS CONDLIN, PLC
Virginia State Bar No.: 83325                            1519 Summit Avenue, Suite 102
Gregory M. Caffas (admitted *pro hac vice*)              Richmond, VA 23230
Virginia State Bar No.: 92142                            tsmith@rothjackson.com
ROTH JACKSON GIBBONS CONDLIN, PLC                        Telephone: 804-729-4440
8200 Greensboro Drive, Suite 820                         Facsimile: 804-441-8438
McLean, VA 22102
Telephone: 703-485-3535
Facsimile: 703-485-3525
mroth@rothjackson.com
gbradley@rothjackson.com
gcaffas@rothjackson.com

*Counsel for American Vehicle Protection Corp., Tony Allen Gonzalez, Tony Gonzalez Consulting Group d/b/a The Gonzalez Group, and CG3 Solutions, Inc., f/k/a My Protection Plan Inc. and Charles Gonzalez*

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2022, a copy of the foregoing document was served on all counsel of record via ECF, pursuant to the Federal Rules of Civil Procedure.

/s/ *Carl Taylor Smith*
Carl Taylor Smith