# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-60298-RAR

**FEDERAL TRADE COMMISSION**,

      Plaintiff,

v.

**AMERICAN VEHICLE
PROTECTION CORP.**, *et al.*,

      Defendants.

_____/

## ORDER GRANTING FTC'S MOTION TO DISMISS
## AND DENYING AVP'S MOTION TO DISMISS AND STRIKE

Before this Court are novel challenges to the Federal Trade Commission's statutory authority to pursue certain enforcement actions in federal court. The parties[1] have filed cross motions to dismiss, [ECF Nos. 40, 53], that are ripe for review.[2] The Court has carefully reviewed the FTC's Complaint, [ECF No. 1], AVP's First Amended Complaint, [ECF No. 39], the parties' submissions, the record, applicable law, and is otherwise fully advised. For the reasons set forth below, it is hereby

**ORDERED AND ADJUDGED** that the FTC's Motion to Dismiss is **GRANTED** and AVP's Motion to Dismiss and Strike is **DENIED**.

---

[1] This action consolidates related cross-complaints filed as separate lawsuits. For clarity, the Court will refer to the parties by their names, rather than Plaintiff or Defendant. The "AVP" parties include American Vehicle Protection Corp., Tony Allen Gonzalez, Tony Gonzalez, Consulting Group, Inc. d/b/a The Gonzalez Group, Charles Gonzalez, and CG3 Solutions Inc. f/k/a My Protection Plan Inc., Daniel Kole, and Kole Consulting Group, Inc.

[2] The motions have been fully briefed and considered. The Federal Trade Commission ("FTC") filed its Motion to Dismiss AVP's First Amended Complaint for Lack of Subject-Matter Jurisdiction, ("FTC Motion"), to which the opposing parties filed a Response in Opposition, [ECF No. 56] ("AVP Resp."), and the FTC replied, [ECF No. 57], ("FTC Reply"). Regarding AVP's Motion to Dismiss and Motion to Strike Certain Prayers for Relief, ("AVP Motion"), the FTC filed a Response in Opposition, [ECF No. 48] ("FTC Resp."), and AVP replied, [ECF No. 52], ("AVP Reply").

The Court begins by providing a factual background, including a summary of the operative complaints the parties seek to dismiss.  The Court will then address the legal standards governing both motions, before proceeding to analyze, in Part I, the FTC's Motion to Dismiss.  In analyzing the FTC's Motion, the Court will consider: (A) whether requirements under the Administrative Procedure Act ("APA")—namely final agency action and lack of an adequate remedy in court—bar Counts I–IV of AVP's Amended Complaint; and (B) whether the Court must dismiss AVP's claims under the Declaratory Judgment Act ("DJA"), Counts V–VII, for lack of subject-matter jurisdiction.

Then, in Part II, the Court will address AVP's Motion to Dismiss FTC's Complaint and Strike Certain Prayers for Relief.  In addressing AVP's Motion, the Court will consider: (A) whether the Telemarketing and Consumer Fraud and Abuse Act permits the FTC to bring claims seeking equitable monetary relief; (B) whether section 13(b) of the FTC Act requires the FTC to first initiate administrative proceedings before filing a suit seeking an injunction; and (C) whether to strike the FTC's prayers for relief.

## **BACKGROUND**

The FTC first initiated this action on February 8, 2022, against AVP, in connection with AVP's marketing and sale of purported extended automobile warranties, known as vehicle service agreements.  FTC Compl. at ¶ 1.  The FTC alleges that since 2018, AVP has deceptively marketed and sold purported extended automobile warranties to consumers across the United States through telemarketers.  *Id.* at ¶ 2.  The FTC alleges, *inter alia*, that the telemarketers misrepresent their affiliations with various car dealerships and make illusory promises of "full vehicle" coverage for the extended warranties, and they guarantee that consumers can obtain a refund within 30 days. *Id.*  However, consumers purportedly have not and do not receive the coverage promised after paying hundreds or thousands of dollars, nor are they able to obtain the promised refund.  *Id.*

AVP filed their own lawsuit against the FTC shortly thereafter, which the Court *sua sponte* consolidated with the FTC's lawsuit, [ECF No. 29]. In AVP's operative Complaint, AVP avers that they sell legitimate auto warranties which confer a benefit on consumers. AVP Compl. at ¶ 15. AVP also alleges that in November 2021, in response to the FTC's investigation, AVP revamped their policies, practices, and procedures, including halting the sales and promotion of vehicle service contracts so that employees and contractors could receive new training from a consulting firm on compliance and related issues. *Id.* at ¶¶ 15–19. AVP provided the FTC sworn declarations in January 2021 (one month prior to the FTC's filing of their suit) regarding the steps AVP took in response to the FTC's investigation. *Id.* at ¶ 22. While AVP was aware of the FTC's investigation and had been in contact with the FTC, the FTC did not initiate any internal agency administrative proceedings regarding AVP's alleged conduct.

## I.   The FTC's Legal Allegations

The FTC brings this action under sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act") and the Telemarketing and Consumer Fraud and Abuse Act ("Telemarketing Act"). FTC Compl. at ¶ 1. The FTC asserts seven counts.

In ***Count I***, the FTC alleges AVP has violated section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce," and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which prohibits telemarketers from making certain misrepresentations in the sale of goods and from calling consumers whose phone numbers appear on the Do Not Call Registry. FTC Compl. at ¶¶ 1, 32, 39, 42–47.

***Counts II, III, and IV*** allege AVP made various misrepresentations. Count II alleges that AVP misrepresented they are affiliated with the car manufacturer or dealer of the vehicles owned by the consumers on the phone, without having any association with the stated manufacturers or dealers. *Id.* at ¶ 55. Similarly, Count III alleges AVP misrepresented material aspects of the

performance, efficacy, nature, or central characteristics of the product they sell. Specifically, the extended warranties did not provide "full vehicle" coverage, as promised by AVP's telemarketers. *Id.* at ¶ 57. In Count IV, the FTC alleges AVP misrepresented to consumers that they can obtain a refund within 30 days of purchasing the warranty, when in practice, most consumers were unable to obtain a refund at all. *Id.* at ¶¶ 24, 59.

**Count V** alleges the use of remotely created payment orders ("RCPOs") in connection with telemarketing, *id.* at ¶ 61, which purportedly violates the TSR, *id.* at ¶ 25.

**Counts VI and VII** allege AVP made calls in violation of the National Do Not Call registry and failed to pay national registry fees associated with the registry. *Id.* at ¶¶ 63–65.

## II.   AVP's Legal Allegations

AVP's Complaint alleges seven counts against the FTC. The first four counts are brought under the APA, 5 U.S.C. § 701 *et seq.*, and the last three under the DJA, 28 U.S.C. § 2201.

**Count I** alleges the FTC's decision to file a lawsuit against AVP seeking injunctive relief under section 13(b) of the FTC Act was arbitrary, capricious, and an abuse of discretion. AVP's Complaint alleges that prior to the FTC filing its Complaint, the FTC had information from AVP that AVP had revamped their marketing and sales procedures, and therefore, the FTC could not have had reason to believe that the violations were ongoing or imminent and that an injunction would be in the public interest, as required by section 13(b). AVP Compl. at ¶¶ 31–34.

In **Counts II and III**, AVP alleges the FTC acted outside its statutory jurisdiction, authority, and limitations, and in doing so, acted without observance of procedure required by law. AVP alleges, as they do in their Motion to Dismiss and Strike, that section 13(b) of the FTC Act is limited to circumstances in which the FTC pursues internal, administrative enforcement procedures. Because the FTC has not pursued such enforcement procedures, AVP claims the FTC has exceeded its statutory jurisdiction, authority, and limitations by bringing suit. *Id.* at ¶¶ 37–47.

Similarly, **Count IV** alleges that in seeking equitable monetary relief pursuant to section 19(a)(1) of the FTC Act for violations of the TSR, the FTC has again acted in excess of statutory jurisdiction, authority, and limitations. AVP, who also advances this argument in their Motion to Dismiss and Strike, alleges that lawsuits under section 19(a)(1) are limited to circumstances in which there are violations of a rule promulgated under the FTC Act itself, not the Telemarketing Act. *Id.* at ¶¶ 49–51.

**Counts V, VI, and VII** seek declaratory judgments from the Court declaring the following: the Telemarketing Act does not provide equitable monetary relief in any lawsuit brought by the FTC against AVP for violations of the TSR, *id.* at ¶¶ 54–58; section 13(b) of the FTC Act does not provide the FTC with authority to file a lawsuit for a permanent or preliminary injunction independent of administrative procedures, *id.* at ¶¶ 60–65; and the FTC lacks authority to seek implied, equitable preliminary injunctive relief, *id.* at ¶¶ 67–71.

## LEGAL STANDARDS

When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). But a court need not accept the plaintiff's legal conclusions as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is proper, although not required, for the Court to address subject-matter jurisdiction first, *see Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 587-88 (1999), so the Court begins by addressing the FTC's Motion to Dismiss for Lack of Subject-Matter Jurisdiction under the APA. In this Circuit, the question of whether the APA permits judicial review in a particular case is a question of subject-matter jurisdiction. *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1280 (11th Cir. 2015) (holding that where there was no final agency action, district court "correctly held that it did not have

jurisdiction over [APA] claim."); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003) ("[F]ederal jurisdiction is … lacking when the administrative action in question is not 'final' within the meaning of 5 U.S.C. § 704"). "[T]he plaintiff who lacks standing never had a 'Case' to begin with . . . . [B]ecause standing to sue implicates jurisdiction, a court *must* satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Accord Gardner v. Mutz*, 962 F.3d 1329, 1337, 1339 (11th Cir. 2020) (emphasis in original). "[A] dismissal for lack of subject-matter jurisdiction is entered without prejudice." *Yeh Ho v. Sabocik*, 775 F. App'x 551, 555 (11th Cir. 2019).

AVP's Motion is not based on subject-matter jurisdiction, but rather the FTC's purported authority to bring suit. Rule 12(b)(6) of the Federal Rules of Civil Procedure prompts dismissal of a federal agency's complaint when that agency lacks authority to bring a lawsuit. *U.S. Commodity Futures Exch. Comm'n v. Vision Fin. Partners, LLC*, 190 F. Supp. 3d 1126, 1127 (S.D. Fla. 2016); *see e.g.*, *United States v. Vico*, 360 F. Supp. 3d 1328, 1334–35 (S.D. Fla. 2018) (explaining that where it is contended that a government entity lacks authority to bring a claim for failure to satisfy a condition precedent, the motion is "appropriately framed as a request for dismissal under Rule 12(b)(6)"). The non-movant has an obligation to provide the "grounds" of a recognized legal theory that supports their entitlement to recovery, which "'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Brignac v. United States*, 239 F. Supp. 3d 1367, 1373 (N.D. Ga. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## **ANALYSIS**

The Court now turns to the substance of each motion. Part I will address the FTC's Motion, which asks the Court to dismiss AVP's Complaint for failure to meet the APA's statutory prerequisites to bring suit—and because AVP cannot avoid the APA's jurisdictional requirements

by fashioning their claims as a declaratory judgment action.  Part II will address AVP's Motion, which seeks dismissal of the FTC's case because the FTC cannot sue to obtain a monetary remedy for violation of a rule not promulgated under the FTC Act itself—and the FTC exceeded its statutory authority by bringing claims for injunctive relief before initiating administrative proceedings.  Lastly, the Court will address AVP's motion to strike certain prayers for relief.

## I.  The FTC's Motion to Dismiss AVP's First Amended Complaint

The FTC's Motion advances two main arguments.  First, the FTC contends that dismissal is proper because AVP cannot satisfy the APA's requirements to bring suit in district court under Counts I–IV of their Complaint, and therefore the Court lacks subject-matter jurisdiction.  Second, the FTC argues the Court should dismiss Counts V–VII of AVP's Complaint because AVP cannot use the DJA to sidestep the APA's jurisdictional requirements, and these claims are not ripe.

### a.  *AVP's APA Claims Warrant Dismissal*

Counts I–IV of AVP's Complaint must be dismissed for lack of subject-matter jurisdiction.  These counts are filed under the APA, 5 U.S.C. §§ 701–706.  As relevant here, the APA only authorizes judicial review of "final agency action for which there is no other adequate remedy in court."  5 U.S.C. § 704.  Because the Eleventh Circuit has held that the question of whether the APA permits judicial review in a particular case is a question of subject-matter jurisdiction, *LabMD*, 776 F.3d at 1280, the Court analyzes this issue as such—not as a motion to dismiss for failure to state a claim, as advanced by AVP.  *See* AVP's Resp. at 2, n.1.

AVP's APA claims fail both prongs of the APA's statutory test to bring suit, which requires the agency to have (1) taken a "final agency action," and (2) "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The Court concludes that the agency action in this case—the decision to file this lawsuit—was not final, and AVP has another adequate remedy in a court: defending the FTC's lawsuit.  Thus, the Court lacks subject-matter jurisdiction to hear AVP's case.

*First*, the FTC's filing of this lawsuit in federal district court was not a "final agency action" taken by the FTC.  An agency action is not final unless it meets two criteria: (i) it "mark[s] the consummation of the agency's decisionmaking process" rather than being "of a merely tentative or interlocutory nature," and (ii) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  The FTC's filing of a lawsuit in federal court does not pass this test.

The Supreme Court has held that an agency's decision to commence an administrative legal proceeding does not constitute a final agency action within the meaning of the APA.  *FTC v. Standard Oil Co.*, 449 U.S. 232, 239–47 (1980).  And other courts have extended that holding to apply to non-administrative legal proceedings, such as enforcement actions filed in federal district courts, like this one.  *E.g.*, *Endo Pharms. Inc. v. FTC*, 345 F. Supp. 3d 554, 560 (E.D. Pa. 2018) ("[E]ven if the Commission 'consummated' its decisionmaking by filing the enforcement action, the decision is not final because it does not determine any rights or obligations and has no legal consequences"); *Nerium Int'l, LLC v. Fed. Trade Comm'n*, No. 19 C 7189, 2020 WL 5217152, at *4 (N.D. Ill. Aug. 31, 2020) ("FTC's initiation of a civil enforcement action does not constitute final agency action."); *Am. Fin. Benefits Ctr. v. Fed. Trade Comm'n*, No. 17-04817, 2018 WL 3203391, at *8 (N.D. Cal. May 29, 2018) (finding *Standard Oil* controlling, and "[t]he fact that the FTC elected to file a civil, as opposed to administrative complaint, is of no consequence.").

This makes sense.  The initiation of legal proceedings is not final; it is the start of a process in which the agency continues to participate.  "[D]eterminations [of rights and obligations] and legal consequences will flow from the [c]ourt's and jury's findings and decisions, not a decision by the [FTC]." *Endo Pharms.*, 345 F. Supp. 3d at 560 (citing *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013)).  The FTC's investigations, decisions to file complaints,

and filing of complaints "are of an interlocutory nature." *Am. Fin. Benefits*, 2018 WL 3203391, at *7.

*Second*, turning to the next prong of the APA's prerequisite test, the Court finds that AVP has other adequate remedies in court. Particularly, AVP raises the same arguments in their Complaint *and* their Motion to Dismiss and Strike, addressed *infra* (Analysis Part II). The duplicity of AVP's Complaint and their Motion to Dismiss and Strike weighs heavily against AVP's argument that they have no other adequate remedy in court.

The same was true in *Buntrock v. SEC*. There, the plaintiff sued the SEC in the Northern District of Illinois while defending an existing action against the SEC in the same court. *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003). The plaintiff made the same arguments in their complaint that they could have made in a motion to dismiss the SEC's claims in the already-existing action. *Id.* Consequently, the Seventh Circuit held this demonstrated the plaintiff had other adequate remedies in Court. *Id.*[3]

Here, AVP raises Counts II, III, and IV their Motion to Dismiss—thereby demonstrating that AVP has other adequate remedies in court. *See Nerium Int'l*, 2020 WL 5217152, at *5 (holding that "Plaintiffs undoubtedly have an adequate remedy in the enforcement action" because "Plaintiffs can raise the same arguments they assert here as defenses in that action"); *see also Am. Fin. Benefits*, 2018 WL 3203391, at *9 ("The proper forum to adjudicate whether the Companies' practices are subject to and in compliance with the TSR is in the enforcement proceeding."). As for Count I of AVP's Complaint, AVP points out that they did not (and purportedly cannot) raise the arguments in Count I in its Motion to Dismiss. AVP Resp. at 6. However, that does not save

---

[3] In addition, the Seventh Circuit observed that plaintiff's "attempt to derail the SEC's suit by filing his own suit against the SEC rather than seeking relief in that suit has no basis in law or common sense, and indeed is (if an oxymoron is permissible) seriously frivolous; and a frivolous suit does not engage the jurisdiction of the district court." *Buntrock*, 347 F.3d at 997.

AVP's claim because the Court finds that the FTC's decision to sue was not a final agency action, and therefore the first prong of the test is not met.

Ultimately, given the lack of final agency action and AVP's opportunity for the Court to address their claims, the Court must conclude it lacks subject-matter jurisdiction under the APA to entertain Counts I–IV of AVP's Complaint.  Accordingly, Counts I–IV of AVP's Complaint are **DISMISSED** *without prejudice*.

### b.   AVP's DJA Claims Warrant Dismissal

Turning to the FTC's second argument to dismiss AVP's Complaint, the Court finds that Counts V, VI, and VII must also be dismissed for lack of subject-matter jurisdiction.  The FTC offers two arguments as to why the Court should dismiss AVP's remaining claims under the DJA.

*First*, the FTC argues the DJA may not be used to circumvent the APA's jurisdictional requirements.  The FTC argues, "[i]f agency action 'is not final so as to be reviewable under the Administrative Procedure Act [a plaintiff] is not helped on the question of jurisdiction by the Declaratory Judgment Act … for that Act does not afford an independent basis for jurisdiction.'" FTC Motion at 11 (citing *Cont'l Bank & Tr. Co. v. Martin*, 303 F.2d 214, 215 (D.C. Cir. 1962)).  AVP agrees to an extent, recognizing that "DJA functions only to provide an additional remedy for federal court litigants, *i.e.*, declaratory relief, but that an independent basis for subject matter jurisdiction would still be needed for DJA claims."  AVP Resp. at 7.

The parties do not cite—and the Court is not aware of—any Eleventh Circuit cases addressing whether a party can preemptively sue a government agency under the DJA to foreclose the agency's enforcement suit against the party.  But the FTC identifies four cases in the First, Fourth, Sixth, and Seventh Circuits, in which appellate courts have upheld dismissals of suits where parties attempt to bypass APA requirements by bringing DJA claims against an agency.

The Court finds these cases instructive. In *Volvo GM*, the Fourth Circuit affirmed the dismissal of Volvo's declaratory judgment claims against the Department of Labor, finding that Volvo did not establish jurisdiction under the APA, and "the Declaratory Judgments Act does not provide a basis for federal subject-matter jurisdiction." *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 210 (4th Cir. 1997). The Seventh Circuit ruled similarly in *General Finance Corp.*, where Judge Posner wrote an opinion affirming the district court's dismissal of claims seeking a declaratory judgment against the FTC for lack of subject-matter jurisdiction, where Plaintiffs did not meet the statutory requirements to file suit. *Gen. Fin. Corp. v. F.T.C.*, 700 F.2d 366, 368 (7th Cir. 1983) ("You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court…."); *see also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 493, 497 (6th Cir. 2014) (where APA claims were dismissed for lack of finality, the DJA did not provide independent basis for jurisdiction); *Town of Sanford v. United States*, 140 F.3d 20, 22 (1st Cir. 1998) (same).

AVP does not counter with any contrary cases. Instead, AVP attempts to distinguish the cases cited by the FTC, pointing out that *Volvo GM* and *General Finance Corp.*, for example, dealt with the APA's requirement to exhaust administrative remedies. AVP argues that the FTC cannot require AVP to exhaust administrative remedies when the FTC never brought an internal administrative agency action to begin with. AVP Resp. at 11. This is a red herring. The FTC has not argued—nor would it make sense for the FTC to argue—that AVP must exhaust administrative remedies. Instead, the FTC clearly argues that where APA requirements are not met (whether it be exhaustion requirements, or the requirements of finality and lack of other adequate remedies in court), the DJA does not provide an alternative basis for jurisdiction. The Court agrees. AVP cannot avoid APA requirements through claims brought under the DJA. The Court could dismiss AVP's DJA claims for this reason alone. But, for the sake of completeness, the Court treks on.

*Second*, not only does the DJA fail to provide AVP with jurisdiction to sue the FTC, but AVP's declaratory judgment claims are also not ripe for judicial review. Ripeness, here, turns on (i) the "fitness of the issues for judicial decision" and (ii) the "hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Indeed, district courts across the country that have analyzed this issue have concluded that a matter is not fit for judicial decision unless it involves a "final agency action" under the APA. *Endo*, 345 F. Supp. 3d at 563; *Nerium*, 2020 WL 5217152, at *6; *Am. Fin. Benefits*, 2018 WL 3203391, at *10. As this Court has already held, there is no final agency action in this case. Considering the second piece of the *Abbot* test, the Court concludes that AVP will not experience significant hardship, as this Court will address AVP's claims as defenses to the FTC's enforcement action. *See Endo*, 345 F. Supp. 3d at 563; *Nerium*, 2020 WL 5217152, at *6.[4]

*Lastly*, AVP cannot sidestep the APA's requirements of finality and no alternative remedy in court by making conclusory assertions that the Court has federal question jurisdiction. In AVP's Response, they assert the Court has federal question jurisdiction over their DJA claims because the claims arise under the FTC Act and the Telemarketing Act. AVP Resp. at 9. AVP further states, in a conclusory fashion, that there is "undoubtedly federal question jurisdiction for the DJA claims," calling it a "necessary conclusion." *Id.* at 10. The Court disagrees. Counts V, VI, and VII are labeled "Declaratory Judgment" claims in AVP's Complaint. These claims are not brought *under* the FTC Act and Telemarketing Act; they seek rulings *interpreting* these two statutes. Thus, they cannot confer federal question jurisdiction under 28 U.S.C. § 1331.

---

[4] The FTC advances a third argument, asking the Court to exercise its discretion to deny AVP's claims seeking declaratory judgment. *See* FTC Motion at 13–15. The Court will not address this argument in full, given the strength of the other arguments advanced by the FTC. However, given that the FTC was the first to file and AVP is attempting to engage in procedural fencing, the Court is further inclined to deny AVP's declaratory judgment claims. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (explaining first-filed rule); *Nat'l Trust Ins. Co. v. S. Heating & Cooling*, 12 F.4th 1278, 1287 (11th Cir. 2021) (explaining procedural fencing).

The Court concludes that AVP's Complaint must be dismissed with prejudice for lack of subject-matter jurisdiction.  The APA claims do not meet the APA's statutory requirements because the FTC has not taken a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and the DJA does not provide an alternative source of jurisdiction for the remaining claims seeking declaratory relief.  Accordingly, Counts V–VII of AVP's Complaint are **DISMISSED** *without prejudice*.

### II.    AVP's Motion to Dismiss the FTC's Complaint and to Strike Prayers for Relief

In Part I, the Court found that AVP would have an opportunity, other than through their own Complaint, for their allegations to be heard.  That opportunity is now.  Through their Motion to Dismiss, AVP presents two questions.  The first question is whether section 19 of the FTC Act authorizes the FTC to seek equitable monetary relief for alleged violations of the Telemarketing Sales Rule ("TSR"), given that it was not promulgated under the FTC Act itself.  The second question is whether section 13(b) of the FTC Act authorizes the FTC to seek an injunction in this case, without administrative proceedings.  The Court answers both questions in the affirmative, thereby denying AVP's Motion.  Additionally, the Court denies AVP's motion to strike certain prayers for relief.

### a.   Equitable Monetary Relief for Violations of the TSR

There are two statutory schemes to lay out before addressing the FTC's authority to bring this lawsuit.  Congress has authorized the FTC to promulgate rules under both the FTC Act (FTC Act § 18, 15 U.S.C. § 57a) and the Telemarketing Act (15 U.S.C. § 6102(a)).  Congress authorized the FTC to enforce rules promulgated under FTC Act § 18, 15 U.S.C. § 57a, in the next section of the Act, FTC Act § 19, 15 U.S.C. § 57b.  Congress authorized the FTC to enforce rules promulgated under the Telemarketing Act, 15 U.S.C. § 6102(a), in a later subsection, 15 U.S.C. § 6102(c), and in a subsequent section, 15 U.S.C. § 6105.

Section 19 is titled, "Civil actions for violations of rules and cease and desist orders respecting unfair or deceptive acts or practices." 15 U.S.C. § 57b. Part (a)(1) states: "[i]f any person, partnership or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices … then the Commission may commence a civil action against [them] for relief under subsection (b) in a United States district court…." 15 U.S.C. § 57b(a)(1). Subsection (b) provides that the "nature of relief available" includes "the refund of money or return of property." 15 U.S.C. § 57b(b). In lay terms, to enforce rules created under section 18 of the FTC Act, section 19 of the FTC Act allows the FTC to bring a lawsuit in federal district court seeking the return of money for victims of unfair practices.

But here, the FTC seeks to enforce a rule promulgated under the Telemarketing Act, 15 U.S.C. § 6102(a), not section 18 of the FTC Act. So, the Court must explain how the Telemarketing Act authorizes enforcement. As noted above, Congress authorized the FTC to enforce rules promulgated under the Telemarketing Act, 15 U.S.C. § 6102(a), in a later subsection, 15 U.S.C. § 6102(c), and a subsequent section, 15 U.S.C. § 6105. In relevant part, section 6102(c), titled "violations," states "any violation of any rule prescribed under subsection (a) – (1) *shall be treated as a violation of a rule under section 57a* of this title regarding unfair or deceptive acts or practices." 15 U.S.C. § 6102(c) (emphasis added). Naturally, this begs the question: how are violations of rules under section 57a (*i.e.*, FTC Act section 18) enforced? As addressed above, they are enforced through section 57b (*i.e.*, FTC Act section 19). And, as already stated, section 19 provides for lawsuits in federal district court to obtain equitable monetary relief for victims of the defendants' unfair actions. Therefore, violations of the TSR, created under section 6102(a), must be enforced through section 19 of the FTC Act, if the FTC is to treat them as violations of rules under section 18.

And that's not all.  In addition to section 6102(c), section 6105 also clarifies how the FTC is to enforce rules promulgated under the Telemarketing Act.  In relevant part, section 6102(a) states, "in general…this chapter shall be enforced by the Commission under the Federal Trade Commission Act (15 U.S.C. § 41 et seq.)."  15 U.S.C. § 6105(a).  Next, section (b), titled "actions by commission," reads the FTC "shall prevent any person from violating a rule of the Commission under section 6102 of this title *in the same manner*, *by the same means*, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC Act] were incorporated into and made part of this chapter."  15 U.S.C. § 6105(b) (emphasis added).  It continues, "[a]ny person who violates such rule *shall be subject to the penalties* and entitled to the privileges and immunities provided in the [FTC Act] in the same manner, by the same means, and with the same jurisdiction, power, and duties as though all applicable terms and provisions of the [FTC Act] were incorporated into and made part of this chapter."  *Id.* (emphasis added).  And if there was any doubt as to whether this section is intended to expand or shrink the FTC's authority, section 6105(c) states: "[n]othing contained in this chapter shall be construed to limit the authority of the Commission under any other provision of law."  15 U.S.C. § 6105(c).

In their Reply, AVP argues for the first time that by using the term "shall prevent" in 15 U.S.C. § 1605(b), Congress only intended to provide *injunctive relief* set forth in section 13(b) of the FTC Act.  AVP also argues that by using the term "subject to the penalties," Congress only intended to provide *civil penalties* as set forth in section 5 of the FTC Act—not equitable monetary relief set forth in section 19.  This is an extremely narrow reading of section 1605(b), which the Court cannot adopt.  Notably, no other court has adopted AVP's interpretation either.  Section 6105(b) does not use narrow language referring back to specific types of relief provided for in the FTC Act.  Its language is inclusive.  It says, "as though *all* applicable terms and provisions of the

[FTC Act] were incorporated into and made part of this chapter." 15 U.S.C. § 6105(b) (emphasis added). The Court will not re-write that language to exclude the remedies set forth in section 19.

Based on the Court's analysis of these statutory schemes, the Court concludes that the FTC has authority to enforce the TSR under section 19 through a lawsuit in district court seeking equitable monetary relief. In so holding, the Court joins its colleagues on the Ninth Circuit and in this District, who reached the same conclusion.

In *FTC v. Hanley*, the Ninth Circuit concluded a rule promulgated under another statute (in that case, the Dodd-Frank Act) was enforceable under section 19(a)(1) because the Dodd-Frank Act, like the Telemarketing Act here, provided that the FTC could enforce those rules under the FTC Act. *FTC v. Hanley*, No. 20-15143, 2022 WL 187848, at *1 (9th Cir. Jan. 20, 2022). AVP does not distinguish or otherwise address this case in its briefing.

In *FTC v. Simple Health Plans*, like in this case, the FTC alleged that defendants violated the TSR. *FTC v. Simple Health Plans LLC*, No. 18-62593, 2021 WL 4050819, at *3 (S.D. Fla. Sept. 5, 2021). After analyzing section 19, the court explained, "for a civil action alleging a rule violation, § 19 authorizes courts to grant relief to redress consumer injury." *Id.* The court then proceeded to determine whether the FTC "[a]lleged a rule violation within the purview of § 19(a)(1)." *Id.* Answering that question, the court considered the Telemarketing Act, which states that "TSR violations 'shall be treated as a violation of a rule under section 57a of [the Act] regarding unfair or deceptive acts or practices.'" *Id.* at *4 (citing 15 U.S.C. § 6102(c)(1)). The court concluded, "[a]ccordingly, a violation of the TSR is treated the same as a violation of a rule promulgated under the [FTC] Act. And, as set forth above, § 19 expressly permits the Commission to file a civil action for rule violations…." *Id.*

AVP urges this Court to disregard *Simple Health Plans* due to a purported misquotation of the case in the FTC's Response and because *Simple Health Plans* does not analyze section 18 of

the FTC Act.  Neither of these arguments is persuasive.  The Court has done its own analysis of each relevant statute, including section 18, as well as reviewed the reasoned opinion in *Simple Health Plans*, and concludes that the FTC has authority to bring this suit as explained above.

### b.  *Injunctive Relief Under Section 13(b)*

The FTC seeks an injunction under section 13(b) of the FTC Act to prohibit further violations of the TSR and FTC Act.  AVP argues that section 13(b) only permits the FTC to file a lawsuit seeking injunctive relief when the FTC "has reason to believe" the entity is violating or is about to violate any provision of law enforced by the FTC and "the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public."  FTC Act, § 13(b), 15 U.S.C. § 53(b).  As there are no ongoing or expected administrative complaints in this case as contemplated by the second prong, AVP argues the FTC cannot bring a suit for injunctive relief under section 13(b).

The FTC argues that its authority to commence a lawsuit seeking an injunction under section 13(b) comes from the "second proviso" of the statute, which states, "*provided further, that in proper cases* the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  FTC Act, § 13(b), 15 U.S.C. § 53(b).  Based on the interpretation of this statute by the Supreme Court and Eleventh Circuit, and fundamental principles of statutory construction, the Court finds that the FTC has authority to bring a lawsuit seeking a permanent injunction under the second proviso of the FTC Act, § 13(b), 15 U.S.C. § 53(b).  The Court additionally finds that issuance of a preliminary injunction is an ancillary remedy available to the FTC, to the extent it is needed while the FTC pursues a permanent injunction.

To begin, the Court acknowledges the interpretation of provisos is not always a simple task.  Indeed, addressing the complexity of interpreting provisos, Justice Scalia and Professor

Bryan Garner have observed, "[o]ne now often finds *provided that* introducing not a condition to an authorization or imposition, but an exception to it, or indeed even an addition to it."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 154 (2012).  And they conclude, "because of the variable meaning and variable reach of provisos, they have come to be disfavored by knowledgeable drafters."  *Id.*  With that said, the Court ventures into recent analyses of the second proviso in section 13(b) by other courts.

In *AMG v. FTC*, the Supreme Court held that section 13(b) precludes the FTC from seeking monetary relief under this section.  *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1344 (2021).  The precise question answered by the Court was: "[d]id Congress, by enacting § 13(b)'s words, 'permanent injunction,' grant the Commission authority to obtain monetary relief directly from courts, thereby effectively bypassing the [administrative] process set forth in § 5 and § 19?"  *Id.* at 1347.  Concluding the FTC could not seek monetary relief under the second proviso of section 13(b), the Court went on to reason that "[t]he language and structure of § 13(b), taken as a whole, indicate that the words 'permanent injunction' have a limited purpose[.]"  *Id.* at 1348.  That "limited purpose" is to provide "relief that is prospective, not retrospective."  *Id.*

In explaining why section 13(b) must be read prospectively, the Court reasoned that the second proviso, by using the words "permanent injunction," indicates that "those words are directly related to a previously issued preliminary injunction.  They might also be read, for example, as *granting authority* for the Commission to go one step beyond the provisional and ('in proper cases') *dispense with administrative proceedings to seek what the words literally say* (namely, an injunction)."  *Id.* (emphasis added).  Thus, the Court in *AMG* expressly stated that a plausible reading of section 13(b) grants the FTC authority to seek an injunction *without* engaging in administrative proceedings.  That is precisely what the FTC seeks to do in this case.

The Court further elaborated on its interpretation that the second proviso "in proper cases" allows the FTC to "dispense with administrative proceedings" in seeking an injunction by explaining, "to read those words as allowing what they do not say, namely, as allowing the Commission to dispense with administrative proceedings to obtain monetary relief as well, is to read the words as going well beyond the provision's subject matter." *Id.* In other words, while the FTC may dispense with administrative proceedings to obtain an injunction, permitting the FTC to also dispense with administrative proceedings to obtain monetary relief would exceed the purpose of the second proviso, which is to provide prospective relief. In so stating, the Court explicitly recognized there may be certain cases in which the FTC may dispense with administrative proceedings and go directly to district court to obtain an injunction under section 13(b) (although not to obtain monetary relief).

*AMG* suggests again that in proper cases, the FTC may seek an injunction without initiating any administrative proceedings. The Court explained, "the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, *or when it seeks only injunctive relief.*" *Id.* at 1349 (emphasis added). The second clause of this sentence necessarily indicates there are situations in which the FTC may use section 13(b) to obtain injunctive relief regardless of whether administrative proceedings are foreseen or in progress.

Sound principles of statutory interpretation support the Supreme Court's reading. Namely, the "surplusage canon" requires that "every word and every provision is to be given effect…. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision to have no consequence." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). Applied to section 13(b), the Court finds that the FTC's interpretation properly avoids rendering statutory language irrelevant. The section begins:

> Whenever the Commission has reason to believe—
>
> **(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> **(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—
>
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice.

FTC Act, § 13(b), 15 U.S.C. § 53(b).  The plain meaning of this portion of the statute is undisputed. When the FTC has reason to believe an entity is violating or is about to violate a law enforced by the FTC *and* enjoining that violation would be in the interest of the public while administrative proceedings are ongoing or foreseen, then the FTC may bring a lawsuit in federal district court seeking to enjoin that act.

The section then goes on to state, in pertinent part:

> *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect:
>
> *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

*Id.* (italics in original).  AVP maintains this second proviso, combined with part (2) of section 13(b), mandates administrative proceedings before the FTC can seek a permanent injunction.  But this interpretation would run afoul of the surplusage canon.  Specifically, the phrases "in proper cases" and "after proper proof" contemplate there are cases, or some forms of evidence, that are unique.  And in these "proper cases," the second proviso permits the FTC to side-step the administrative proceeding requirement and proceed directly to district court.  AVP's interpretation,

which would require administrative proceedings in *all* cases, would render the phrases "in proper cases" and "after proper proof" meaningless. Accordingly, this particular language in the second proviso establishes that there are some cases in which administrative proceedings are not required. This very outcome was suggested by the Court in *AMG*.[5]

The FTC also argues that ancillary to its ability to seek a permanent injunction without initiating administrative proceedings, they may also seek a *preliminary* injunction to effectuate that permanent injunction under section 13(b). Importantly, in interpreting the second proviso, the Supreme Court uses the terms "injunction" and "injunctive relief," *AMG*, 141 S. Ct. at 1347, 1349, while the second proviso itself uses the term "permanent injunction," FTC Act §13(b), 15 U.S.C. § 53(b). Because the Court does not explain why it provides for broader injunctive relief, while the statutory language clearly refers only to *permanent* injunctions, this Court turns to other cases to determine whether the second proviso allows for a preliminary injunction to effectuate the permanent injunction sought by the FTC.

In earlier cases, this question came up with respect to forms of ancillary relief such as asset freezes and contract recission. In *FTC v. U.S. Oil & Gas*, the Eleventh Circuit held, "Congress did not limit the court's powers under the final proviso of § 13(b) and as a result this Court's inherent equitable powers may be employed to issue a *preliminary injunction*, including a freeze of assets,

---

[5] Additionally, AVP's interpretation may even render the entire second proviso meaningless. Before the second proviso, section 13(b) sets out two requirements: (1) there is or is about to be a violation; and (2) enjoining the violation pending administrative proceedings would be in the interest of the public. FTC Act, § 13(b), 15 U.S.C. § 53(b). Then, pursuant to section 13(b), once those two requirements are met, "the Commission… may bring suit in a district court of the United States to *enjoin* any such act or practice." *Id.* (emphasis added). It does not grant the FTC authority to bring a suit in district court seeking *only a TRO or preliminary injunction*. The plain meaning of this sentence authorizes the FTC to bring a suit to "enjoin," in general. It does not specify the remedy by which the suit may seek to "enjoin" the actions. Therefore, a lawsuit to obtain a *permanent* injunction (seeking to enjoin the violation) *while administrative proceedings are ongoing* is already authorized by the first part of the statute, before the second proviso. *See* FTC Act, § 13(b), 15 U.S.C. § 53(b)(2). To give the complete second proviso any meaning, it must authorize the FTC to do something other than what the statute already authorizes earlier: that is, bring a suit for permanent injunction in district court *without* administrative proceedings.

during the pendency of an action for permanent injunctive relief." *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). However, *FTC v. U.S. Oil & Gas* has been abrogated, to some extent, by a more recent Eleventh Circuit case, post-*AMG*.

In *FTC v. On Point Capital Partners*, the Eleventh Circuit revisited the question of whether section 13(b)'s grant of authority to seek a permanent injunction still included ancillary relief like asset freezes, receiverships, and preliminary injunctions, in light of the Supreme Court's ruling in *AMG* that section 13(b) does not provide for monetary relief. *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021). First, the court acknowledged, "[p]rior to *AMG Capital Management*, Eleventh Circuit precedent interpreted 15 U.S.C. § 53(b) as not limiting the traditional equitable powers of the district courts, including the power to grant monetary relief." *Id.* "Therefore, district courts could implement preventative measures, such as asset freezes, in preliminary injunctions to preserve resources '**needed to make permanent relief possible**,' *i.e.*, to satisfy a future monetary judgment." *Id.* (emphasis in original). However, the court reasoned, since monetary relief was no longer available after *AMG*, there was no need to preserve resources. Therefore, the court ruled, "the imposition of an asset freeze or receivership premised solely on § 53(b) is inappropriate and we vacate the portions of the District Court's preliminary injunction imposing these restrictions." *Id.*

Importantly, however, the Eleventh Circuit did not vacate the preliminary injunction in its entirety in *On Point*—only the portions related to monetary relief prohibited by *AMG*. In fact, the court expressly stated: "[w]ith the asset freeze and receivership dealt with by *AMG Capital Management*, the only remaining question is whether the District Court abused its discretion by enjoining [Defendants] from misrepresenting their services or releasing customer information. Prospective injunctive relief is still allowed under § 53(b)." *Id.* at 1079. After analyzing the merits of the district court's grant of the injunction (which is not yet relevant here, as the Court has not

had the opportunity to consider the merits of this case), the Eleventh Circuit affirmed the portions of the preliminary injunction enjoining the defendants "from engaging in deceptive practices or releasing consumer information." *Id.* at 1084.

While *On Point* is now the leading Eleventh Circuit authority on the question of whether a preliminary injunction is permissible to further the objectives of a permanent injunction, the case did not address the precise question presented here: whether administrative proceedings are required for the Court to issue a preliminary injunction to the extent it assists in carrying out the permanent injunction the FTC seeks under the second proviso.  But the Eleventh Circuit did address that question, albeit in an unpublished opinion, *prior* to the Supreme Court's ruling in *AMG*.  In the 2020 appeal of *Simple Health Plans*, the Eleventh Circuit "concluded that—incident to the district court's express statutory authority to issue a permanent injunction under section 13(b)'s second proviso—the district court had authority to order preliminary relief during the pendency of an action for permanent injunctive relief" even though the FTC never filed an administrative complaint.  *FTC v. Simple Health Plans, LLC*, 792 F. App'x 761, 762 (11th Cir. 2020).  And *On Point* does not contradict this holding because *On Point* still allows for a preliminary injunction.  Reading these cases together, the Court finds that pursuant to Supreme Court and Eleventh Circuit precedent, the FTC has authority to seek a permanent injunction under the second proviso, and the Court may issue a preliminary injunction to the extent it is needed to effectuate the permanent injunction.

Lastly, in adopting this interpretation of section 13(b)'s second proviso and permitting the FTC's Complaint to stand, the Court also inherently agrees that the FTC has deemed this a "proper case," under the second proviso, to seek a permanent injunction.  The Court does not, however, make any ruling as to whether there is "proper proof," as required by the second proviso, for the Court to issue a permanent injunction.  The Court leaves that task for another day.

### c.   *FTC's Prayers for Relief*

AVP moves to strike two prayers for relief contained within the FTC's Complaint: (1) a preliminary injunction issued ancillary to permanent injunctive relief, and (2) a permanent injunction to prevent future violations of the law.  The decision to grant a motion to strike falls within this Court's "broad discretion."  *Achievement & Rehab. Centers, Inc. v. City of Lauderhill*, No. 12-61628, 2012 WL 6061762, at *1 (S.D. Fla. Dec. 6, 2012).  Motions to strike, however, are "generally disfavored by the court[,]" and "[s]triking allegations from a pleading … 'is a drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken allegations have 'no possible relation to the controversy.'"  *SEC v. Walker*, No. 20-62564, 2021 WL 5088854, at *1 (S.D. Fla. Aug. 16, 2021) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia County., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).

Based on the analysis in Part II above, the Court will not strike any prayers for relief at this time.  *If* the Court ultimately rules in favor of the FTC, the parties will have the opportunity to propose language for the Court to consider when drafting an appropriate injunction.  Thus, the Court finds no need to resort to the drastic remedy of striking the FTC's prayers for relief.

### **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the FTC's Motion to Dismiss, [ECF No. 53], is **GRANTED**.  AVP's First Amended Complaint is **DISMISSED** *without prejudice*.  AVP's Motion to Dismiss and Strike, [ECF No. 40], is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of October, 2022.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**